[No. C050147. Third Dist. Sept. 16, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
RICKY VERRELL BAUGHMAN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

**COUNSEL**

Maribeth Halloran, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, David A. Rhodes and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ROBIE, J.**—Defendant Ricky Verrell Baughman was convicted after a jury trial of incest, oral copulation of a person under the age of 16, and 10 counts of lewd and lascivious acts upon a child more than 10 years younger than defendant. Sentenced to nine years eight months in state prison, defendant appeals. He contends there was insufficient evidence to support three of the counts for committing lewd and lascivious acts and that the trial court erred in failing to instruct the jury with a specific acts unanimity instruction as to the incest count. He also contends his upper term sentence violates *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531].

When this matter was previously before us, we concluded defendant had forfeited his *Blakely* argument by failing to object in the trial court. The California Supreme Court granted review and transferred the matter back to this court with directions to vacate our decision and reconsider the cause in light of *People v. French* (2008) 43 Cal.4th 36 [73 Cal.Rptr.3d 605, 178 P.3d 1100]. Having now done so, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The victim, F., was born in November 1989. She and her two brothers lived in a trailer with defendant, their father. F. testified that "a little while after Christmas"—approximately "three or four months" after her 14th birthday—defendant placed his hand on her breast, under her shirt and bra, while she was lying in bed. He left his hand there for a "long time."

Later that same day, while the family was at defendant's mother's house, defendant apologized to F. and said it would "never happen again." Within five minutes, however, defendant closed the bathroom door, had F. remove her panties, and licked F.'s vagina as she sat on the toilet. After a minute or two, defendant removed his pants and had sexual intercourse with F. Afterward, he again told her he was sorry and it would never happen again.

Defendant, however, continued to have sex with F. just about every week. Nearly every time, defendant would apologize and promise it would never happen again. The incidents occurred when F.'s brothers were gone or asleep. Sometimes defendant gave her brothers money to go to the store and would then have sex with F. while they were gone. Defendant would tell the brothers to slow down if they returned too quickly. On one occasion, F.'s

brothers awoke while defendant was having sex with F. and saw defendant "going up and down." When F.'s brothers told defendant they thought he and F. were having sex, defendant got upset, raised his voice, and said he and F. had just been playing around.

On November 11, 2004, a couple of weeks after the final incident, F. told an adult friend that defendant was having sex with her and she could no longer stay with him. F. was interviewed by police. Being scared and nervous, she failed to mention that defendant had also had sex with her on that first occasion when he licked her vagina.

Defendant was interviewed by police on November 17, 2004. In that interview, he denied any sexual contact with F. On November 19, 2004, however, during a consultation with Billy Lee Wilson, Jr., a marriage and family therapist intern at Shasta Treatment Associates, defendant admitted he had a sexual relationship with F. Defendant told Wilson that he had sexual intercourse with F. between four to six times, "[o]ne to two years before" the date of the consultation. Also, on December 1, 2004, in another interview with police, defendant admitted he had sexual intercourse with F. several times.

At trial, defendant testified he did not remember having sex with F., although he did not deny it. Defendant did not remember speaking with Wilson and said he admitted having sex with F. to the police because the police made him fear F. would commit suicide or turn to drugs or prostitution if he said she was lying. Defendant said he had problems with his memory due to a head injury he sustained a few years earlier.

DISCUSSION

I

*Substantial Evidence**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1316.

## II

### *Unanimity Instruction*

Defendant also contends the trial court failed to give the required specific acts unanimity instruction for the one count of incest. He contends this omission resulted in a violation of his state and federal constitutional due process rights and his state constitutional right to a unanimous verdict. There was no error.

■ The requirement of jury unanimity " 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' [Citation.] . . . 'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done something sufficient to convict on one count.' " (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 [108 Cal.Rptr.2d 436, 25 P.3d 641], italics omitted.)

With respect to the charge of incest, defendant was charged with one count alleged to have occurred between December 1, 2003, and September 30, 2004. The evidence presented and argued by the prosecution consisted of at least two specific instances, as well as testimony the incest occurred weekly for approximately nine months. The prosecution did not select any specific act to prove the charge. Therefore, a unanimity instruction was required.

The court instructed the jury with CALJIC No. 4.71.5 which has two variations. In the first, the jury is told that, "in order to find the defendant guilty, you must unanimously agree upon the commission of [the same specific act [or acts] constituting the crime] . . . within the period alleged" (*ibid.*; the "specific acts version").

In the second, which was given by the court here and did not distinguish among the charges, the jury was told it "must unanimously agree upon the commission of . . . [all of the acts described by the alleged victim] within the period alleged." According to the Use Note, the first version should be given where "the jurors might disagree as to the particular act defendant committed." The second should be used "[w]hen there is no reasonable likelihood of

juror disagreement as to particular acts, and the only question is whether or not the defendant committed all of them."

Defendant contends this instruction as given by the court was inadequate to inform the jury of the requirement that it unanimously agree on the acts constituting the crimes alleged. Defendant argues that the court should have instructed the jury in accordance with either the "specific acts version" of CALJIC No. 4.71.5 or with CALJIC No. 17.01, which reads: "The defendant is accused of having committed the crime of _____ [in Count ___]. The prosecution has introduced evidence for the purpose of showing that there is more than one [act] [or] [omission] upon which a conviction [on Count ___] may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt that [he] [she] committed any one or more of the [acts] [or] [omissions]. However, in order to return a verdict of guilty [to Count ___], all jurors must agree that [he] [she] committed the same [act] [or] [omission] [or] [acts] [or] [omissions]. It is not necessary that the particular [act] [or] [omission] agreed upon be stated in your verdict."

While the "specific acts version" of CALJIC No. 4.71.5 may have been more appropriate as to the incest count, the jury was faced with either believing F. or defendant. The instruction given by the trial court adequately informed the jury of the requirement of unanimity. Indeed, it went even further. Even if it were possible the jurors might have disagreed about how many or which incidents occurred, the instruction given by the court indicated the jury must unanimously agree that defendant committed *all* of the acts described by F.[1] This is a much heavier burden than requiring unanimous agreement on any particular act. The jury is presumed to have complied with the instructions given to it. (*People v. McLain* (1988) 46 Cal.3d 97, 119–120 [249 Cal.Rptr. 630, 757 P.2d 569].)

Nevertheless, defendant contends that reversal is required under *People v. Smith* (2005) 132 Cal.App.4th 1537 [34 Cal.Rptr.3d 472]—a case in which this court reversed the defendant's sex offense conviction based on the trial court's failure to give a unanimity instruction and the risk that the defendant may have been convicted even though there was no agreement among the jurors as to which act constituting the crime the defendant committed. (*Id.* at p. 1540.) *Smith* is inapposite because the instruction here told the jury it must unanimously agree that defendant committed *all* the acts described by F., and unlike in *Smith*, there is nothing in the record to suggest the jury did not follow this plain instruction. (*Ibid.*) We find no error.

---

[1] Since the jury unanimously agreed defendant had committed all of the acts described by the victim, it necessarily unanimously agreed defendant had committed each specific act.

## III

### Blakely *Violation*

At the sentencing hearing held on June 10, 2005, the trial court imposed the upper terms on the incest and oral copulation convictions and consecutive terms on the remaining convictions. In imposing the upper terms, the trial court found as follows: "[T]his was an event that was precipitated and occurred under circumstances . . . where there was an initial encounter with the victim and then there was this promise that it would never happen again and then within minutes the substantive offensive conduct occurred. And all of this . . . leads me to conclude in this particular case this offense is more aggravated and deserves the aggravated term because at the moment it was occurring, Mr. Baughman himself was acknowledging to the victim that he knew what he was doing was wrong and he went ahead and he did it any way and he planned to do it, and it seems to me that those things are undeniable in what were going on here." The court also considered in aggravation that the manner in which the crime was carried out indicates planning, sophistication, or professionalism, and that defendant took advantage of a position of trust or confidence to commit the offense. In mitigation, the court found defendant's criminal history limited and his prior performance on probation satisfactory.

Relying on the United States Supreme Court decisions in *Blakely v. Washington, supra,* 542 U.S. 296 [159 L.Ed.2d 403] and *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856], defendant claims the trial court's imposition of the upper term consecutive sentence violated his federal constitutional right to a jury trial because the aggravating circumstances were not found true by a jury beyond a reasonable doubt or admitted by him. The People respond defendant forfeited this contention because he failed to raise it in the trial court. On remand, although defendant filed a supplemental brief, the People declined to do so.

The California Supreme Court, however, recently rejected the forfeiture argument in *People v. French, supra,* 43 Cal.4th at pages 46–48, holding that the right to a jury trial on aggravating circumstances, which is guaranteed by the federal Constitution, may not be forfeited absent an express waiver by the defendant. Since defendant here did not expressly waive his right to a jury trial on aggravating circumstances, we address his claim on the merits.

In *Cunningham,* the United States Supreme Court applied *Blakely* to California's determinate sentencing law and held that by "assign[ing] to the

trial judge, not to the jury, authority to find the facts that expose a defendant to an elevated 'upper term' sentence," California's determinate sentencing law "violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments." (*Cunningham v. California, supra*, 549 U.S. at p. 274.)

Applying *Cunningham*, our Supreme Court held in *People v. Black* (2007) 41 Cal.4th 799 [62 Cal.Rptr.3d 569, 161 P.3d 1130] that "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." (*Black*, at p. 816.)

Here, the aggravating factors relied on by the trial court were not found to exist by the jury, admitted by defendant, or based on prior convictions. Therefore, defendant's constitutional rights were violated by the trial court's imposition of an upper term sentence.

■ Such an error is harmless if we can conclude "beyond a reasonable doubt, that [a] jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury." (*People v. Sandoval* (2007) 41 Cal.4th 825, 839 [62 Cal.Rptr.3d 588, 161 P.3d 1146].)[2] We find that to be the case here. One of the aggravating factors cited by the trial court in imposing the upper term was that "defendant took advantage of a position of trust or confidence to commit the offense." We have no doubt the jury unquestionably would have found this factor to be true. Defendant was the single parent of his victim daughter. When he initially fondled his daughter, he promised not to do it again, but then within five minutes, orally copulated her and had sexual intercourse with her. Again, he said he was sorry and that it would never happen again. Defendant, however, continued to have sexual intercourse with his daughter almost every week, and during most of these instances apologized and (erroneously) said it would not happen again. He made sure his sons (the victim's brothers) were either out of the house or asleep when he had sexual intercourse with his daughter, and during the one incident when he was caught by his sons, he denied committing the acts. On this record, a jury would have unquestionably found that defendant took advantage of a position of trust or confidence to commit the incest and oral copulation.

---

[2] Defendant contends that the decision in *Sandoval* violates constitutional principles of forfeiture, double jeopardy, separation of powers, and the prohibition against ex post facto laws. Although we are bound to follow *Sandoval* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), he simply raises the issue to preserve it for subsequent review.

## DISPOSITION

The convictions are affirmed.

Sims, Acting P. J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 10, 2008, S167559.