[No. E047842. Fourth Dist., Div. Two. June 23, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
WAYNE FREDERICK TOMPKINS, Defendant and Appellant.

Counsel

Robert E. Boyce and Benjamin D. Kington, under appointments by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gary W. Brozio and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**HOLLENHORST, Acting P. J.—**

## I. INTRODUCTION

Defendant Wayne Frederick Tompkins appeals from his conviction of 11 counts of lewd and lascivious acts with a minor under the age of 14 (Pen. Code,[1] 288, subd. (a); counts 1–11); two counts of penetration of a person under the age of 18 with a foreign object (§ 289, subd. (h); counts 41–42); one count of using a minor to perform prohibited acts (§ 311.4, subd. (c); count 44); and four counts of lewd and lascivious acts with a minor under the age of 16 and more than 10 years younger than defendant (§ 288, subd. (c)(1); counts 45–48).

Defendant argues the evidence was insufficient to support several of the counts involving victim Jane Doe 2, because (1) the corpus delicti rule prohibited convicting him of acts described only by his out-of-court statements, (2) the victim's generic testimony was insufficient to establish his guilt, and (3) with respect to his conviction of a violation of section 311.4, subdivision (c), there was no evidence he filmed the victim. He further contends the trial court erred in permitting a detective to testify as an expert on child sex abuse about victims' difficulties remembering the number of molestations and distinguishing between the times they were molested. Finally, defendant argues the imposition of the upper term for one count violated his constitutional rights to a jury trial and proof beyond a reasonable doubt. We find no prejudicial error, and we affirm.

## II. FACTS AND PROCEDURAL BACKGROUND

Defendant's victim, Jane Doe 2, is his daughter, who was born in February 1992. Defendant and Jane Doe 2's mother divorced in 1996, and Jane Doe 2

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

lived with her mother. In 2004 and 2005, Jane Doe 2 visited defendant about twice a month. Jane Doe 2 testified that when she was 11 or 12 years old, defendant began molesting her during some, but not all, of the visits. She testified that he molested her more than once and less than 50 times. He touched her on her breasts about four times and digitally penetrated her vagina once or twice, but possibly more times than that. Once when she was on the Internet, using a Webcam while talking to males, defendant gave her a dildo and told her to use it to have fun, and she did so. Jane Doe 2 testified that she had difficulty remembering back to 2004 and 2005, but she had told the truth when she had been interviewed by a detective.

Investigator Trevor Montgomery of the Riverside County Sheriff's Department testified that he had interviewed Jane Doe 2 in January 2006. She had cried and had been distraught and embarrassed during the interview. She told Investigator Montgomery that defendant had touched her on the shoulders, arms, sides, back, legs, hips, thighs, buttocks, breasts, and vagina from February 2004 through late 2005. Defendant had digitally penetrated her vagina "three specific times" or "two or three times." Once, defendant caught her having conversations with adult men on the Internet, and he gave her a Webcam and vibrator so she could masturbate online for the men, which she did.

Jane Doe 3 was 14 years old in 2005 when she lived about three blocks away from defendant. Defendant gave her and her sister kittens, and she began visiting defendant with her sister or a friend, Jane Doe 4. Defendant provided the girls with alcohol and marijuana. More than once, defendant said inappropriate things to her, put his hand on her shoulder, and tried to touch her breasts or put his hand on her thigh and tried to move it toward her vaginal area. She saw defendant trying to touch Jane Doe 4 in a similar way several times.

Jane Doe 4 was born in 1990, and she also lived down the street from defendant. She testified defendant often hugged her and caressed her shoulder. If he had tried to kiss her, she would have pushed him away.

Investigator Reece Burchett testified that Jane Doe 4 had told him defendant put his head in her lap and that of Jane Doe 3 and hugged them. Defendant told the girls they were beautiful, and he asked Jane Doe 4 to kiss

him and have sex with him. When he tried to kiss her, she turned her head so he kissed her on the cheek. Jane Doe 4 told the investigator she had seen defendant touch or slap the breast of Jane Doe 3 four times.

D.A., a witness who had been 14 in 2003, testified she had lived next door to defendant. Once when she had visited his house to borrow some bread, defendant had told her she had beautiful eyes and he dreamed of making love with her and her mother.

Investigator Montgomery testified that he had interviewed defendant twice in January 2006. The interviews were recorded, and edited portions of the recordings were played for the jury. Defendant told the investigator he had seen D.A.'s breasts and pubic hair through gaps in her loose clothing, and he wanted to make love to her. He said he had imagined a sexual relationship with D.A. and her mother together.

Defendant told Investigator Montgomery about giving kittens to Jane Doe 3. He admitted he had bought alcohol and marijuana and had parties with Jane Does 3 and 4 over the course of several days. He told the girls marijuana made him horny. Jane Doe 4 had been on his computer and had exposed her bra and breasts. He and Jane Doe 4 "tag[ged] and tickl[ed]" each other in the kitchen, and he saw her underwear when she bent down. He told her he wanted to make love to her. He also described watching Jane Doe 3 at the computer and wanting to touch her.

Defendant told Investigator Montgomery he had had some form of sexual contact with his daughter, Jane Doe 2, almost every time she visited him from February or March 2004 through November 2005. He had taught her how to kiss. He had her sit on his lap, and she moved around. He came up behind her while she was on the computer, and he touched her breasts. Another time while she was on the computer, he knelt beside her and touched her. He also described sitting in the back of his son's car with her and touching her breasts, having her lie on top of him with her breasts against his chest, squeezing her buttocks and asking her to shower with him, lying on top of her, lying next to her on the couch and feeling her breasts and putting his finger in her vagina. Defendant said he learned that Jane Doe 2 had met a man on an Internet chat room, and he had given her a dildo to use while on the Webcam and had offered her advice on how to start.

The jury found defendant guilty of 11 counts of lewd and lascivious acts with a minor (Jane Doe 2) under the age of 14 (Pen. Code, § 288, subd. (a)); two counts of penetration of a person under the age of 18 (Jane Doe 2) with a foreign object (§ 289, subd. (h)); one count of using a minor (Jane Doe 2) to perform prohibited acts (§ 311.4, subd. (c)); and four counts of lewd and

lascivious acts with a minor under the age of 16 and more than 10 years younger than defendant (two of those counts involved Jane Doe 3 and two counts involved Jane Doe 4) (§ 288, subd. (c)(1).) The jury found defendant not guilty of 29 additional counts of section 288, subdivision (a) as to Jane Doe 2.

The trial court sentenced defendant to the upper term of eight years on count 1, consecutive terms of two years (one-third the middle term) for each of counts 2 through 9, and consecutive terms of eight months (one-third the middle term) for each of counts 41, 42, and 44 through 48, for a total of 28 years eight months. The court also imposed six-year terms for each of counts 10 and 11, but stayed those terms under section 654.

Additional facts are set forth in the discussion of the issues to which they pertain.

## III. DISCUSSION

### Corpus Delicti

Defendant argues the corpus delicti rule prohibited convicting him of acts described only by his out-of-court statements, and therefore, his conviction of six of the counts involving Jane Doe 2 should be reversed because the only evidence to support those counts was his own statements to Investigator Montgomery.

### Corpus Delicti Rule

■ "[T]he prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause," and cannot do so by relying exclusively on the statements of the defendant. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168–1169 [119 Cal.Rptr.2d 903, 46 P.3d 372].) The corpus delicti requirement ensures that a defendant will not be convicted of a crime that never happened. (*Id.* at p. 1169.) Proof of the corpus delicti of a crime may be made by circumstantial evidence and need not amount to proof beyond a reasonable doubt. (*Id.* at p. 1171.) Rather, the amount of independent proof required is "quite small," " 'slight,' " or " 'minimal,' " amounting only to a prima facie showing permitting a reasonable inference a crime was committed. (*People v. Jones* (1998) 17 Cal.4th 279, 301 [70 Cal.Rptr.2d 793, 949 P.2d 890].) Once the corpus delicti has been established, the defendant's statements may be considered for their full value. (*People v. Alvarez, supra,* at p. 1171.)

In *People v. Culton* (1992) 11 Cal.App.4th 363, 365 [14 Cal.Rptr.2d 189] (*Culton*) (Fourth Dist., Div. Two), the defendant was convicted of 10 counts

of lewd and lascivious acts on a child under the age of 14 (§ 288, subd. (a)). The evidence against the defendant included the defendant's extrajudicial inculpatory statements and an examining physician's testimony that the physical manifestations were consistent with multiple molestations. (*Culton, supra,* at pp. 369–372.) On appeal, the defendant contended the People had not met their burden to make a prima facie showing of the corpus delicti for each of the charged offenses, and it was therefore error to admit his inculpatory extrajudicial statements. (*Id.* at p. 365.) This court rejected that argument, explaining that the corpus delicti requirement was satisfied because the physical evidence was consistent with multiple occasions of sexual assault. (*Id.* at pp. 372–373.)[2]

■ We read *Culton* as standing for the proposition that separate evidence is not required as to each individual count to establish the corpus delicti; rather, evidence that multiple molestations took place will establish the corpus delicti for multiple counts. (*Culton, supra,* 11 Cal.App.4th at pp. 372–373.) Here, the evidence amply met that standard. Jane Doe 2 testified that defendant molested her more than once but less than 50 times, she had visitation with defendant approximately every other weekend during that period, and defendant molested her on some, but not all, of those visits. She also testified that, although her memory of the incidents was poor, she had told the truth to Investigator Montgomery when he interviewed her. Investigator Montgomery, in turn, testified that Jane Doe 2 had told him defendant had touched her "on many occasions," and "several incidents" had occurred near his computer. That evidence was amply sufficient to meet the standard established in *Culton.* We therefore conclude the People met their burden of making a prima facie showing of the corpus delicti for all the offenses of which defendant was convicted.

### Sufficiency of the Evidence

In a closely related argument, defendant contends Jane Doe 2's generic testimony was insufficient evidence to support his conviction of six counts of lewd and lascivious conduct (§ 288, subd. (a)) and one count of digital penetration (§ 289, subd. (h)). He also challenges the sufficiency of evidence to support his conviction of a violation of section 311.4, subdivision (c) on the ground there was no evidence he filmed the victim.

### Standard of Review

When a criminal defendant challenges the sufficiency of the evidence to support his conviction, we determine " ' "whether, after viewing the evidence

---

[2] We note that defendant failed to cite *Culton* in his opening brief and failed to discuss it in his reply brief, even though the People based their responsive argument on that case.

in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1175 [24 Cal.Rptr.3d 112, 105 P.3d 487]; see *Jackson v. Virginia* (1979) 443 U.S. 307, 319 & fn. 12 [61 L.Ed.2d 560, 99 S.Ct. 2781].) The evidence must be substantial, meaning "evidence which is reasonable, credible, and of solid value . . . ." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) "[M]ere speculation cannot support a conviction." (*People v. Marshall* (1997) 15 Cal.4th 1, 35 [61 Cal.Rptr.2d 84, 931 P.2d 262].) Generic testimony about child molestation may be sufficient to support a conviction, if such testimony "describe[s] *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy)." (*People v. Jones* (1990) 51 Cal.3d 294, 316 [270 Cal.Rptr. 611, 792 P.2d 643].)

### *Sufficiency of Evidence of Multiple Violations of Section 289, Subdivision (h)*

Defendant contends the victim's testimony was insufficient to establish his guilt of only a single count of digital penetration of Jane Doe 2 (§ 289, subd. (h)).

At trial, Jane Doe 2 testified that defendant had committed digital penetration "once, maybe twice." Investigator Montgomery testified, however, that she had told him during her interview that defendant had "digitally penetrated her vagina at least three times that she could recall, three specific times." The investigator later clarified that "her exact words were, 'two to three times.' " Defendant himself admitted one instance of digital penetration.

Investigator Montgomery's testimony about Jane Doe 2's report to him was sufficient evidence to support defendant's conviction of two counts of digital penetration. Even though her testimony at trial was somewhat inconsistent, the inconsistency went only to the weight and credibility of the evidence and, on appeal, we do not disturb the jury's resolution of that inconsistency. (See *People v. Avina* (1989) 211 Cal.App.3d 48, 56 [259 Cal.Rptr. 178].)

### *Sufficiency of Evidence to Support Multiple Violations of Section 288, Subdivision (a)*

Defendant was charged with 40 counts of lewd and lascivious conduct with Jane Doe 2 and convicted of 11 counts. He now contends the evidence was sufficient to support only five of those counts, because Jane Doe 2 provided only generic testimony about the offenses.

At trial, Jane Doe 2 testified that defendant had molested her more than one and less than 50 times. She testified he had touched her breasts "[a] couple of times, probably, like, four times. I don't know." She denied that he had touched any other parts of her body besides her breasts and vagina. The incidents usually occurred in the living room on the couch while she was wearing clothing. She also testified she had trouble remembering the molestations, and other acts could "possibly" have happened.

As defendant points out, in his testimony Investigator Montgomery described 11 distinct incidents, and the jury convicted defendant of 11 counts of section 288, subdivision (a). In addition to the three incidents of digital penetration, the prosecution alleged the "touching" incidents involving Jane Doe 2 included: (1) grinding crotch-to-crotch on a computer chair in early 2004; (2) breast touching in early 2004; (3) breast touching near the computer in early 2004; (4) having her lie naked on top of him; (5) lying on her while her breasts were exposed; (6) kissing; (7) fondling her breasts in the back of his son's car; and (8) touching in a camper. The evidence, in fact, could have supported more than one conviction based on the kissing, because Investigator Montgomery testified Jane Doe 2 had described multiple incidents, which included defendant's use of his tongue. Moreover, defendant's description of the instance of digital penetration included him having Jane Doe 2 lie next to him on the couch while he fondled her breasts before the digital penetration occurred.

Even if, as defendant contends, the same incidents were used as the basis for defendant's convictions of two counts of section 289, subdivision (h), and for some of the counts of section 288, subdivision (a), reversal would not be required. Under section 954, a defendant may be convicted of multiple counts based on the same conduct, although section 654 precludes multiple punishments. Here, the trial court did stay defendant's punishment for two of the section 288, subdivision (a) convictions under section 654.

Because, as we conclude above, defendant's inculpatory extrajudicial statements were properly admitted, they, in conjunction with the testimonies of Jane Doe 2 and Investigator Montgomery, were overwhelmingly sufficient to establish defendant's guilt of all 11 section 288, subdivision (a) counts.

*Elements of Violation of Section 311.4, Subdivision (c)*

Defendant contends a violation of section 311.4, subdivision (c) required evidence that he had personally filmed his daughter using the dildo he provided her.

■ Section 311.4, subdivision (c) provides that a parent who knowingly permits a minor under his or her control "to engage in or assist others to

engage in either posing or modeling alone or with others for purposes of preparing any representation of information, data, or image, . . . that contains or incorporates in any manner, any film, filmstrip, or a live performance involving, sexual conduct by a minor under the age of 18 years alone or with other persons or animals, is guilty of a felony."

In *People v. Cochran* (2002) 28 Cal.4th 396 [121 Cal.Rptr.2d 595, 48 P.3d 1148] (*Cochran*), our Supreme Court addressed a violation of section 311.4, subdivision (b), which is similar to subdivision (c), but provides for greater punishment when the prohibited acts are performed for a commercial purpose. The *Cochran* court listed the elements of the offense, in addition to the commercial purpose element, as to "(1) knowingly have caused a child, (2) who is known or should be known to be a child, (3) to participate in the production of any representation of sexual conduct by a child . . . ." (*Cochran, supra,* at p. 401.) Moreover, for a parent or guardian to be convicted, the elements of the offense are to "(1) knowingly have permitted the child, (2) to participate in the production of any representation of sexual conduct by a child . . . ." (*Ibid.*) Notably, nothing in that formulation requires that the defendant personally have been the filmmaker.

It was undisputed that defendant was Jane Doe 2's parent, and he knew she was a minor under the age of 18. It was also undisputed that he provided her a dildo and encouraged her to participate in the production of a digital representation of sexual conduct over the Internet, which she in fact did. Defendant contends, however, that in *People v. Hobbs* (2007) 152 Cal.App.4th 1 [60 Cal.Rptr.3d 685] (*Hobbs*) (Fourth Dist., Div. Two), this court established the additional element that the defendant must have personally conducted the filming.

We disagree with that narrow reading of *Hobbs*. In *Hobbs*, the defendant challenged the sufficiency of the evidence to support his conviction of 40 counts of violating section 311.4, subdivision (c). (*Hobbs, supra,* 152 Cal.App.4th at pp. 3–4.) The defendant had clandestinely entered a high school locker room and had set up a concealed video camera, which he used to film girls between the ages of eight and 18 who were changing into and out of their bathing suits. (*Id.* at p. 4.) On appeal, he argued that section 311.4, subdivision (c) required that the victims be engaged in *posing* or *modeling* at the direction of the defendant, and, because he had had no personal interaction with the victims, his convictions could not stand. (*Hobbs, supra,* at p. 5.) A majority of this court rejected the defendant's challenge. After reviewing other provisions that made up the chapter that included section 311.4, the majority stated, "Section 311.4, subdivision (c), in contrast to all the other provisions in the chapter, *clearly targets the person actually filming the pornographic material.*" (*Hobbs, supra,* at p. 6.)

■ Defendant relies on that statement to argue that, because he did not film his daughter, he could not have been guilty of the crime of which he was convicted. To the extent *Hobbs* can be interpreted as holding that the person who does the actual filming is the *only* person targeted in section 311.4, subdivision (c), we now are convinced that *Hobbs* was wrongly decided and is inconsistent with the *Cochran* court's listing of the elements of the offense. Indeed, defendant's interpretation of the statute, particularly when applied to a parent, is inconsistent with its clear language. Under that clear language, a parent violates the statute by knowingly *permitting* a minor to engage in or assist others to engage in posing or modeling for purposes of preparing representation of sexual conduct. (§ 311.4, subd. (c); *Cochran, supra,* 28 Cal.4th at p. 401.) The evidence overwhelmingly established defendant's guilt of that offense.

### Expert Opinion Testimony About Child Molestation Victims

Defendant contends the trial court abused its discretion by permitting Investigator Montgomery to testify as an expert witness that victims of long-term child molestation have difficulty remembering and distinguishing the incidents.

### Additional Background

Jane Doe 2 testified about uncertainty as to the number of events, and she had difficulty remembering and distinguishing between the incidents. Investigator Montgomery testified on cross-examination that during his interview with Jane Doe 2, she had been uncertain and unable to recall details of the incidents. On redirect examination, Investigator Montgomery testified he had been involved in "[m]any, many, many, many" child molestation investigations over the course of his 10-year law enforcement career, including investigations of molestations that had continued for over a year. He had also been present during interviews of molestation victims conducted by child investigation specialists.

The prosecutor asked Investigator Montgomery if it was fair to say that victims of child molestation that had occurred for a period of more than a year had difficulty remembering the number of times the molestations had occurred. Investigator Montgomery responded, "Absolutely. In most cases they block out the majority of what happened and remember only the most disturbing of the incidents, and it's very hard for them to recall them." Defense counsel then objected on the ground of lack of foundation, and the trial court overruled the objection.

The prosecutor next asked Investigator Montgomery about the ability of victims of long-term molestation to distinguish the different incidents of molestation. Defense counsel again objected on the ground of lack of foundation. The trial court requested further foundational detail on the investigator's experiences with observing Riverside Child Assessment Team (RCAT) interviews. Investigator Montgomery described being personally involved with "a few dozen" RCAT interviews, many of which involved victims of long-term molestation. The prosecutor asked if, during the interviews, the victims showed difficulty in distinguishing between the molestation incidents. The trial court overruled a defense objection on the ground of lack of foundation, and Investigator Montgomery responded, "It's not just difficult for the victims, it's almost impossible, as they have a very difficult time distinguishing between one event and another."

On recross-examination, Investigator Montgomery testified he had taken a 40-hour course in investigating sex crimes against children, but he had never testified as an expert witness. He testified that an older child, one who was 11, 12, or 13, would be better able to distinguish between particular incidents than would a younger child who was six or seven. He also testified that he was not providing expert testimony but could "only testify to what [he] observe[d]."

*Standard of Review*

We review the trial court's admission of expert testimony, including the trial court's ruling on foundational matters, for abuse of discretion. (*People v. Dean* (2009) 174 Cal.App.4th 186, 193 [94 Cal.Rptr.3d 478].)

*Analysis*

■ The trial court has broad discretion in determining whether a witness is qualified to testify as an expert. (*People v. Stanley* (1984) 36 Cal.3d 253, 261, fn. 5 [203 Cal.Rptr. 461, 681 P.2d 302] (*Stanley*).) Even though Investigator Montgomery did not have significant academic qualifications, his experience as a child sexual abuse investigator was substantial. (See, e.g., *Jordan v. Allstate Ins. Co.* (2004) 116 Cal.App.4th 1206, 1216–1217 [11 Cal.Rptr.3d 169] [30 years' experience as a licensed state pest control operator was sufficient foundation for the witness to testify as to the meaning of the cause of property damage].) Any question about the degree of his knowledge went to weight rather than admissibility. (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 658 [43 Cal.Rptr.3d 434].) We conclude the trial court did not abuse its discretion in permitting Investigator Montgomery to testify as an expert.

*Harmless Error*

Even if the trial court erred in admitting Investigator Montgomery's challenged testimony, such error was harmless beyond a reasonable doubt. (*People v. Archer* (1989) 215 Cal.App.3d 197, 206–207 [263 Cal.Rptr. 486] [any error in the admission of child sexual abuse accommodation syndrome testimony was harmless in light of ample evidence of the defendant's guilt]; see also *Stanley, supra,* 36 Cal.3d at p. 261 [any error in the admission of expert testimony about rape trauma syndrome was harmless when the case against the defendant was very strong].) Here, the evidence against defendant, including his own statements, constituted overwhelming evidence of his guilt. Moreover, the challenged testimony was limited to discussion of child victims as a class rather than to any discussion of Jane Doe 2 specifically. (See *People v. Gray* (1986) 187 Cal.App.3d 213, 218 [231 Cal.Rptr. 658].) We conclude any error in the admission of Investigator Montgomery's expert testimony was harmless.

*Imposition of Upper Term Sentence*

The trial court sentenced defendant to the upper term of eight years on count 1. Defendant contends the trial court violated his constitutional rights in doing so, because the sentence was based on facts not found by the jury.

*Additional Background*

The trial court explained its decision to impose the upper term on count 1: "Regarding Jane Doe 2, she was extremely vulnerable because she was his daughter. [¶] The crime disclosed a degree of callousness, because Jane Doe 2 was there on visitations, I believe every other weekend, and that is when this occurred. Instead of being placed in his care for safety, she's placed in his care, and this is what happens. He took advantage of her, took advantage of a position of trust. The lack of criminal history does not outweigh the significance of the crimes committed."

*Analysis*

■ The Sixth Amendment right to a jury trial requires that any fact that exposes a defendant to a greater potential punishment must be found beyond a reasonable doubt by a jury. (*People v. Sandoval* (2007) 41 Cal.4th 825, 835 [62 Cal.Rptr.3d 588, 161 P.3d 1146], citing *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856]; see also *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*).) Here, the trial court cited as factors in aggravation that the crime involved some degree of sophistication and planning, a high degree of callousness, a particularly

vulnerable victim, and taking advantage of a position of trust or confidence. (Cal. Rules of Court, rule 4.421(a)(1), (3), (8) & (11).) The People concede that the use of those factors violated defendant's right to a jury trial.

### Forfeiture

At the sentencing hearing, defendant's counsel objected to the use of certain factors in aggravation, specifically, (1) that the crimes involved violence or threat of harm; (2) that the crimes indicated planning or sophistication; and (3) that defendant engaged in violent conduct. Of those factors, the trial court in fact relied only on planning and sophistication. Defense counsel did not object to the other factors the trial court cited.

In *People v. Black* (2007) 41 Cal.4th 799, 810–812 [62 Cal.Rptr.3d 569, 161 P.3d 1130], our Supreme Court held that in cases in which sentencing had preceded *Blakely*, a claim of sentencing error under the principles of that case was not forfeited in the absence of an objection in the trial court. Here, sentencing took place on February 27, 2009, so the general rule of forfeiture applies. (*People v. Scott* (1994) 9 Cal.4th 331, 357–358 [36 Cal.Rptr.2d 627, 885 P.2d 1040].)

### Harmless Error

Moreover, the error was not prejudicial under the standard of *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. (See *People v. Sandoval, supra*, 41 Cal.4th at p. 839.) Under that standard, if we "conclude[], beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless." (*Ibid.*)

Here, defendant was Jane Doe 2's father, and he admitted sexually abusing her over a period of almost two years. In our view, parenthood is the quintessential position of trust and confidence, and no reasonable jury would have rejected such a finding in this case. (See, e.g., *People v. Baughman* (2008) 166 Cal.App.4th 1316, 1323 [83 Cal.Rptr.3d 570] [jury would "unquestionably" have found that father took advantage of a position of trust and confidence to commit incest and oral copulation with 14-year-old daughter].) We therefore conclude the error was harmless.

## IV. DISPOSITION

The judgment is affirmed.

McKinster, J., and Miller, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 13, 2010, S184960.