Filed 8/11/16  P. v. Sanchez CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VICTOR HUGO SANCHEZ,<br><br>    Defendant and Appellant. | B261177<br><br>(Los Angeles County<br>Super. Ct. No. KA100488) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rand S. Rubin, Judge.  Affirmed.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Victor Hugo Sanchez appeals from the judgment entered after he pleaded no contest to one count of driving with a suspended license and a jury convicted him of one count of driving under the influence. He challenges the latter conviction, arguing the People impermissibly relied exclusively on his extrajudicial statements to establish the corpus delicti of the offense. Because there was sufficient proof of the corpus delicti apart from Sanchez's extrajudicial statements, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Charges*

In February 2014, following a fatal traffic accident, the People charged Sanchez and a co-defendant, Vincent Lopez, with one count each of murder (Pen. Code, § 187, subd. (a)), driving under the influence causing injury (Veh. Code, § 23153, subd. (a)), and driving with a suspended license (Veh. Code, § 14601.1, subd. (a)).[1] The People also alleged that Sanchez had a previous conviction for driving with a blood alcohol level of .08 percent or more (Veh. Code, § 23152, subd. (b)). Sanchez pleaded no contest to driving with a suspended license, and trial began on the remaining counts.

B. *The Evidence*

Kristian Portillo testified that on the afternoon of December 25, 2012 he, Luis Castro, Jess Rodriguez, and Sanchez played pool and drank beer at Portillo's house for approximately four hours before deciding to go to Tina's Tavern. Sanchez drove them to Tina's Tavern in his red Ford Escort. At Tina's Tavern, the four men continued to drink beer and play pool. At some point in the evening Lopez joined the group. The five men

---

[1] The People also charged Lopez with driving while having a blood alcohol level of .08 percent or more.

2

eventually left Tina's Tavern in two cars: Portillo in Lopez's silver Eclipse, with Lopez driving, and Castro and Rodriguez in Sanchez's red Ford Escort, with Sanchez driving. On the way to Portillo's house, Lopez ran a stop sign and collided with a van.[2]

Denise Miller, a bartender at Tina's Tavern, testified that on December 25, 2012 a group of four men arrived at approximately 3:30 p.m. and were joined about an hour later by a fifth. The group of five men included Sanchez and Lopez. Miller estimated that by the time her shift ended at 6:00 p.m. she had served the group five 64-ounce pitchers of beer, which they shared among themselves. Reyna Pierce, another bartender at Tina's Tavern, testified that she began work that evening when Miller's shift ended, and that she served the group one or two more pitchers of beer.

Castro testified that the group ordered and shared at least five pitchers of beer at Tina's Tavern. Castro also confirmed that, on December 26, 2012, he told police that Sanchez, Portillo, and Rodriguez each drank two to three pitchers of beer at Tina's Tavern. Castro testified that, when he left Tina's Tavern in Sanchez's car, with Sanchez driving, Sanchez "blew a stop sign" at a nearby intersection, drove on the wrong side of the street to pass a car, and traveled at approximately 40 miles per hour on a street where the speed limit was 25 miles per hour. Castro stated that he feared for his safety because of Sanchez's driving. He also testified that at one point Sanchez's car and Lopez's car were stopped next to each other at a red light, and that when the light turned green both cars started forward and began swerving between and around other cars. Castro was frightened because Sanchez drove his car into spaces that Castro did not think it would fit.

Susan Lopez was driving in the area around 9:00 p.m. that evening, with her two adult children, Heather and Joshua, as passengers. She testified that while she was driving she noticed two cars, matching the description of Sanchez's car and Lopez's car, approaching her from behind "at a high rate of speed." The cars were traveling side-by-

---

[2] The crash injured the van's driver and killed a passenger. The jury found Sanchez not guilty of offenses relating to that injury and death, and Sanchez challenges only his conviction for driving under the influence.

3

side in the street's two southbound lanes, and as they reached Susan's car, the silver car, which was in Susan's lane, swerved in front of the red car, nearly clipping Susan's left rear bumper.  After the two cars passed her, they continued up the street at the same high rate of speed, running the stop sign at the next intersection.  Susan's daughter, Heather, estimated the two cars ran that stop sign at 60 miles per hour.  Heather testified that she continued to watch the two cars travel at that same rate of speed until they reached another intersection, where the silver car collided with a white van.  Heather believed the two cars were racing.

Detective Brandon Karmann interviewed Sanchez at his home on the morning of December 26, 2012.  At trial the People played an audio recording of the interview.  In the interview, Sanchez stated he witnessed the collision the night before but was too "drunk to know exactly what happened."  He admitted he was driving the red Escort, had been "driving drunk," and had left the scene of the accident because he was "under the influence."  He stated that while at Tina's Tavern he drank "probably, like, a pitcher, two pitchers" of beer.

Detective Karmann and his partner arrested Sanchez and took him to the police station, where Detective Karmann interviewed Sanchez again.  The People played an audio-video recording of this interview as well.  In the interview, Sanchez again estimated he drank two pitchers of beer at Tina's Tavern, admitted he "felt under the influence" when he left, and stated he left the scene of the accident because he knew he was "under the influence" and did not want to get "busted" for "driving drunk."

Detective Karmann concluded that Sanchez was driving under the influence when he left Tina's Tavern on the evening of December 25, 2012.  The detective based this opinion on "all of the people that we spoke with that night, the witnesses that were with [Sanchez] at the bar, one of the bartenders there saying that he was there consuming alcohol, and then his own admission of drinking and probably being under the influence of alcohol and should not have been driving and also his recollection of the actual incident itself."  Detective Karmann also noted that Sanchez was approximately six feet four inches tall and weighed approximately 220 pounds.

4

C.    *The Verdict, Sentence, and Appeal*

The jury found Sanchez not guilty of murder, but guilty of driving under the influence (Veh. Code, § 23152, subd. (a)), a lesser included offense of driving under the influence causing injury.  The jury found true the allegation that Sanchez had previously been convicted for driving with a blood alcohol level of .08 percent or more.

The trial court sentenced Sanchez to 365 days in county jail for driving under the influence and 365 days in county jail for driving with a suspended license, to be served consecutively.  The court awarded Sanchez credit for time served and released him.  Sanchez timely appealed.

## DISCUSSION

Sanchez challenges his conviction for driving under the influence.  Sanchez argues that the People relied exclusively on his extrajudicial statements to establish the corpus delicti of the offense because, aside from his statements to the police, "there is insufficient evidence showing that the red Escort was driven by a person who was under the influence of alcohol."  We find no merit in this argument.

"In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself -- i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause.  In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168-1169; accord, *People v. Sanchez* (2016) 246 Cal.App.4th 167, 173.)  "The corpus delicti requirement ensures that a defendant will not be convicted of a crime that never happened." (*People v. Tompkins* (2010) 185 Cal.App.4th 1253, 1259; see *People v. Alvarez*, at p. 1169 ["[t]his rule is intended to ensure that one will not be falsely convicted, by his or her untested words alone, of a crime that never happened"].)  On appeal, we may "entertain[] direct claims that a conviction cannot stand because the trial record lacks independent evidence of the corpus delicti." (*People v. Alvarez*, at p. 1170; see *People v. Sanchez*, at pp. 173-174.)

5

"The independent proof may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible. [Citations.] There is no requirement of independent evidence 'of every physical act constituting an element of an offense,' so long as there is some slight or prima facie showing of injury, loss, or harm by a criminal agency. [Citation.] In every case, once the necessary quantum of independent evidence is present, the defendant's extrajudicial statements may then be considered for their full value to strengthen the case on all issues." (*People v. Alvarez*, *supra*, 27 Cal.4th at p. 1171; accord, *People v. Sanchez*, *supra*, 246 Cal.App.4th at p. 173.) "[T]he amount of independent proof required is 'quite small,' '"slight,"' or '"minimal,"' amounting only to a prima facie showing permitting a reasonable inference a crime was committed." (*People v. Tompkins, supra*, 185 Cal.App.4th at p. 1259; accord, *People v. Jones* (1998) 17 Cal.4th 279, 301.) Moreover, "'[p]roof of the corpus delicti does not require identity of the perpetrators. It is not necessary that it connect the defendant with the commission of the crime although it may do so.'" (*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1428; accord, *People v. Cullen* (1951) 37 Cal.2d 614, 624.) "The corpus delicti of the offense of driving under the influence consists of proof that the automobile was being driven by some person who was under the influence of alcohol." (*People v. Martinez* (2007) 156 Cal.App.4th 851, 855; see *People v Bowen* (1992) 11 Cal.App.4th 102, 106 ["'"'the *corpus delicti* of the offense [has long consisted of] proof of the ultimate facts that the automobile in question was being driven . . . by some person who was then and there under the influence of intoxicating liquor'"'"].)

Independent of Sanchez's statements to police, the evidence was much more than "slight" or "minimal" that on the evening of December 25, 2012 some person was driving the red Escort under the influence of alcohol. (*People v. Tompkins*, *supra*, 185 Cal.App.4th at p. 1259.) Indeed, there was substantial evidence that person was Sanchez. Portillo and Castro testified that Sanchez drove the red Escort after leaving Tina's Tavern. Miller and Pierce, the two bartenders from Tina's Tavern, estimated they served Sanchez and the other members of his group six or seven 64-ounce pitchers of beer,

6

which the group shared.  Castro told police that Sanchez consumed as many as three pitchers of beer (the equivalent of 16, 12-ounce bottles).  Castro also stated that, when driving from Tina's Tavern, Sanchez "blew a stop sign," drove on the wrong side of the street, and zig-zagged around other cars causing Castro to fear for his personal safety.  Susan and Heather Lopez also described the recklessness with which the red Escort was driven.

At a minimum, this independent evidence supports a reasonable inference that on the evening of December 25, 2012 someone was driving the red Escort under the influence of alcohol.  (See *People v. Canty* (2004) 32 Cal.4th 1266, 1279 ["[t]he gravamen of driving while under the influence is *driving* despite an impairment of capacity"]; *People v. Enriquez* (1996) 42 Cal.App.4th 661, 665 [to be "under the influence" within the meaning of the Vehicle Code section 23152, subdivision (a), the alcohol "must have so far affected the nervous system, the brain, or muscles as to impair to an appreciable degree the ability to operate a vehicle in a manner like that of an ordinarily prudent and cautious person in full possession of his faculties"], italics omitted.)  And, although not necessary to establish the corpus delicti, the independent evidence supports a reasonable inference that it was Sanchez.

## DISPOSITION

The judgment is affirmed.


SEGAL, J.

We concur:


ZELON, Acting P. J.                                    GARNETT, J. [*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7