Filed 3/27/25  P. v. Manuel CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>ANGEL NAZARIO MANUEL,<br><br>    Defendant and Appellant. | C098532<br><br>(Super. Ct. No. 20FE007227) |

A jury found defendant Angel Nazario Manuel guilty of 18 counts of committing a lewd and lascivious act on a child under the age of 14 years.  The trial court sentenced defendant to an aggregate term of 42 years in prison.  On appeal, defendant argues: (1) the People failed to meet their burden to establish the corpus delicti and (2) there was insufficient evidence to support the jury's findings of guilt as to some of the charged counts.  We disagree and will affirm the judgment.

1

# FACTS AND PROCEEDINGS

A. lived in Mexico with her mother, who met defendant on social media and began a romantic relationship with him. In 2018, when A. was nine years old, she and her mother moved to the United States to live with defendant.

In May 2020, defendant called the sheriff's department because A.'s mother would not give him the keys to the car. The reporting officer and his partner responded to the call at the apartment, and A.'s mother told them that she had seen defendant molest A. sometime between the evening of April 27, 2020, and morning of April 28, 2020. Defendant's hand was under A.'s pants, between her legs, and around her vaginal area. A.'s mother explained she had not contacted the police at that time because she wanted to give defendant a second chance.

While his partner detained defendant, the reporting officer spoke with then-11-year-old A., who told him, "I've never actually seen [defendant] touch me sexually with my own eyes; however, I do feel like someone had been touching me occasionally when I am asleep at night. Every time I am asleep, I can feel someone's fingers poking my vagina and touching my body. I didn't see him poke his fingers in my vagina on . . . April 27th of 2020 because I was asleep, but I did feel someone's fingers poking my vagina. [¶] . . . I have been experiencing these types of incidents ever since I have lived with [defendant]."

In an interview with a detective at the police station, defendant admitted that starting in approximately May 2019, he touched A.'s breasts weekly and touched her vagina, including inserting his fingers into her vagina, approximately three or four times.[1]

---

[1] The detective testified defendant admitted to molesting A. beginning in March 2019, but the interview transcript reflects defendant said *May* 2019. Also, the detective testified defendant said he put his fingers inside her vagina at least four or five times, but the interview transcript reflects defendant said three or four times.

As to the incident on April 27, 2020, defendant said he started touching A.'s breasts and then touched her vagina as A.'s mother had seen. Defendant said that he watched pornography, which would cause him to molest A. Defendant was then arrested.

The detective searched through defendant's cellphone and found at least 62 pornographic images of women who looked and dressed like children. The detective also found 1,150 videos, the majority of which were pornographic and contained actresses who looked and dressed like children. The search revealed that between April 27 and April 28, 2020, as well as on other dates, defendant watched several pornographic videos, including videos with titles referencing fathers or stepfathers molesting or engaging in sexual intercourse with their daughters or stepdaughters.

A few days after defendant was arrested, A. participated in a sexual assault forensic examination (SAFE interview). During the SAFE interview, A. said defendant started touching her when they were living in defendant's sister's house, when they first moved to the United States in 2018. During another incident after they moved into an upstairs apartment unit in March 2019, A. felt defendant touch her breasts while she was sleeping in bed. A. said defendant did this "from time to time." On another day, defendant dug into his pockets for money and A.'s underwear fell out. Near late December 2019, the family moved into a downstairs apartment unit. In the downstairs apartment unit, defendant touched her breasts on two other occasions and her vagina on another occasion. A. also noticed defendant would stare at her legs if she wore shorts and stare at her arms if she wore short-sleeved shirts.

Approximately three weeks after A.'s SAFE interview, another detective responded to a call reporting A. had run away. The detective found A. standing in the middle of a freeway overpass bridge with a letter she had written reflecting she had been planning to commit suicide for two years. A. explained that defendant tried to rape her and was under arrest because she previously told law enforcement about it. A.'s mother

3

was upset that A.'s disclosure led to defendant's arrest and now her mother was struggling financially.

While defendant was in custody, he called A.'s mother and asked her to get the charges against him dropped and suggested that she not make A. available to speak to the police. A.'s mother told defendant, "you let those bad thoughts get in your head, and now you did something to the little girl," and defendant did not deny her accusations. In November 2020, A.'s mother called the police and recanted her allegation that defendant molested A., explaining to a detective that she had lied because she was angry with defendant.

An amended information charged defendant with a total of 18 counts of committing a lewd and lascivious act on a child under the age of 14 years (Pen. Code, § 288, subd. (a))[2] by: touching A.'s chest between May 2019 and December 2019 (counts one, three, five, seven, nine, eleven, twelve, & thirteen); touching her genitalia between May 2019 and October 2019 (counts two, four, six, eight, & ten); touching her chest in 2020 (counts fourteen, fifteen, sixteen, & seventeen); and touching her genitalia in 2020 (count eighteen). The amended information also alleged as aggravating factors that the victim was particularly vulnerable; the manner in which the crimes were carried out indicates planning, sophistication, or professionalism; and defendant took advantage of a position of trust or confidence to commit the offenses.

At trial, A. recanted the statements that she made to police officers and in the SAFE interview about defendant touching her vagina and trying to rape her. She claimed she had lied because she was upset with defendant for fighting with her mother. A.'s mother testified there was an incident where she saw defendant reaching toward A. in bed but denied he had his hands in A.'s vagina. But A.'s mother also testified to another

---

[2] Undesignated statutory references are to the Penal Code.

incident where she saw defendant "eyeing" A. when A. was playing with her half brother, who was born in June 2019, and had been crawling on the floor.

A jury found defendant guilty of all counts. During bifurcated proceedings, the trial court found true the aggravating factors that the victim was particularly vulnerable and that defendant took advantage of a position of trust or confidence to commit the offenses. At sentencing, the court imposed an aggregate term of 42 years in prison, comprised of the upper term of eight years for count one and consecutive two-year terms (one-third the midterm) for each of the remaining counts.

## DISCUSSION

On appeal, defendant argues the People failed to establish corpus delicti through evidence independent of defendant's statements. Defendant also contends there was insufficient evidence supporting his convictions for touching A.'s vagina in 2019 (counts two, four, six, eight, & ten). We reject both claims.

### I

### *Legal Background*

Section 288, subdivision (a) provides in relevant part that any "person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony." The statute "is violated by 'any touching' of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child." (*People v. Martinez* (1995) 11 Cal.4th 434, 452.) "[A] lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body." (*Id.* at p. 444.) Thus, "contact with the bare skin or 'private parts' of the defendant or the victim" is not required. (*Ibid.*)

5

II

*Corpus Delicti*

First, defendant contends the prosecution did not meet its burden to establish the corpus delicti of any of the counts.[3]  Specifically, defendant argues there was no corroborating evidence aside from his own statements because (1) A. recanted statements she made in her SAFE interview and to police officers and (2) A.'s mother did not testify she actually saw defendant touch A.  We disagree and conclude circumstantial evidence as well as A.'s and her mother's prior statements sufficiently established the required corpus delicti.

The corpus delicti rule requires some evidence that a crime occurred, independent of the defendant's own statements.  (*People v. Ledesma* (2006) 39 Cal.4th 641, 721.) " '[T]he modicum of necessary independent evidence of the corpus delicti, and thus the jury's duty to find such independent proof, is not great.  The independent evidence may be circumstantial, and need only be a "a slight or prima facie showing" permitting an inference of injury, loss, or harm from a criminal agency, after which the defendant's statements may be considered to strengthen the case on all issues.' " (*Ibid.*)  It is not necessary for the inference to be the only or most compelling one.  (*People v. Jones* (1998) 17 Cal.4th 279, 301-302.)  Rather, it must merely be a reasonable one.  (*Id*. at p. 302.)  The independent proof, moreover, need not establish the crime beyond a reasonable doubt.  (*Id*. at p. 301.)  For multiple counts of lewd conduct, like defendant was convicted of here, "separate evidence is not required as to each individual count to establish the corpus delicti; rather, evidence that multiple molestations took place" is

---

[3]  To the extent defendant argues the corpus delicti rule barred admission of defendant's statements, he is incorrect.  The truth-in-evidence provision of the California Constitution (Cal. Const., art. I, § 28, subd. (f)(2)) abrogated the corpus delicti rule insofar as the rule restricts the admissibility of the incriminatory extrajudicial statements by the accused. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1174.)

sufficient.  (*People v. Tompkins* (2010) 185 Cal.App.4th 1253, 1260.)  Further, evidence of a witness's prior inconsistent statements is admissible not only for impeachment purposes but "to prove their substance as well."  (*People v. Hawthorne* (1992) 4 Cal.4th 43, 55, fn. 4; Evid. Code, §§ 770, 1235.)

Here, evidence independent of defendant's statements cumulatively supported an inference that defendant had molested A. several times, which is sufficient to make the prima facie showing the offense occurred as required by the corpus delicti rule.  The evidence presented at trial included that:  defendant had accessed many pornographic images and videos depicting women who looked underage, titled with names suggesting father-daughter or stepfather-stepdaughter sexual relations; defendant had A.'s underwear in his pocket; and defendant had lustfully eyed A.  Also, because they lived together, defendant had daily access to A. and there was no evidence of anything precluding the molestation.  Though circumstantial, this evidence permits a reasonable inference that A. was molested.

Further, the prosecution could rely on both A.'s and her mother's prior statements to establish the corpus delicti.  A. had told law enforcement that defendant touched her breasts multiple times and her vagina at least once, and had tried to rape her.  Any recantation at trial did not negate the evidence of her prior statements; as noted above, A.'s prior inconsistent statements were admissible to prove their substance, as was her mother's prior inconsistent statement that she saw defendant touching A.'s vagina.  These prior statements are direct evidence further supporting the inference that defendant molested A. several times.  Thus, the prosecution sufficiently established the corpus delicti of all counts of conviction.

## III

### *Sufficiency of the Evidence*

Next, defendant argues there was insufficient evidence to support the convictions based on vaginal touching from May 2019 through October 2019 (counts two, four, six,

7

eight, & ten). Specifically, defendant argues there was no evidence he touched A.'s vagina until after they moved into the downstairs apartment unit, which occurred at some point after Christmas 2019.

"In addressing a claim of insufficient evidence to support a conviction, this court ' "reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." ' [Citation.] 'We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' " (*People v. Jackson* (2016) 1 Cal.5th 269, 345.) "The jury is entitled to draw reasonable inferences based on the evidence [citation], and we must accept all logical inferences the jury might have drawn from the evidence, even if we would have concluded otherwise." (*People v. Campbell* (2020) 51 Cal.App.5th 463, 484.) " ' "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt." ' " (*Ibid.*) We do not reweigh or settle conflicts in the evidence, nor do we assess the credibility of witnesses. (*In re Caden C.* (2021) 11 Cal.5th 614, 640.) Reversal for insufficiency of the evidence is " ' "unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " ' " (*People v. Manriquez* (2005) 37 Cal.4th 547, 577.)

As discussed, *ante*, because sufficient evidence established the corpus delicti, the jury could fully consider defendant's statements in determining his guilt as to all counts. Defendant admitted that he began touching A. in May 2019 and that since that time he had touched A.'s breasts weekly and inserted his fingers into her vagina at least three or

four times.  A. told a police officer that she could feel defendant poking her vagina and touching her body when she was asleep since she started living with defendant in 2018, which includes the charged period of May to October 2019 for counts two, four, six, eight, and ten.  Viewed in the light most favorable to the prosecution, we conclude there is substantial evidence to support defendant's convictions for counts two, four, six, eight, and ten.

## DISPOSITION

The judgment is affirmed.


_____/s/_____
Duarte, Acting P. J.



We concur:



_____/s/_____
Mesiwala, J.



_____/s/_____
Feinberg, J.