60 Cal.Rptr.3d 685 (2007)
152 Cal.App.4th 1
151 Cal.App.4th 1553
The PEOPLE, Plaintiff and Respondent,
v.
Ronald Wayne HOBBS, Defendant and Appellant.
No. E038779.
Court of Appeal of California, Fourth District, Division Two.
June 12, 2007.
*686 The Chase Law Group, Susan Lynn Ferguson and Lorilee M. Gates, Studio City, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Senior Assistant Attorney General, Lilia E. Garcia, Supervising Deputy Attorney General, and Arlene A. Sevidal, Deputy Attorney General, for Plaintiff and Respondent.

OPINION
RAMIREZ, P.J.
Following a court trial, defendant was convicted of two counts of burglary (Pen. *687 Code[1], § 459) and 40 counts of violating section 311.4, subdivision (c). The court also found that defendant had suffered a strike prior. (§ 667, subds.(b)-(i).) He was sentenced to prison for 10 years, 8 months. He appeals, contending there was insufficient evidence to support his convictions for violating section 311.4, subdivision (c). We reject his contention and affirm.

Facts[2]
Defendant lived in San Diego. Via the Internet, he learned that there was going to be a girls' swim meet on May 17 and 18, 2003, at Valley View High School in Moreno Valley. Somehow, he obtained many of the keys to the school, and particularly to the gymnasium area.
Sometime between 2:30 p.m. on May 16 and 6:00 a.m. on May 17, defendant snuck into the girls' locker room. At one end, there was a coaches' office that was raised slightly and equipped with large windows, so as to afford a view of most of the locker room. Defendant covered these windows with paper and tape. He then made a small hole in the paper and set up a video camera so he could film through the hole. He used cones and caution tape, which he found in the coaches' office, as well as handwritten "Do Not Enter" signs, to block off rows of lockers that were outside his camera range.
On May 17 and 18, defendant filmed at least 45 girls who were competing in the swim meet as they changed into and out of their bathing suits. The girls were between 8 and 18 years old. He would zoom in on their breasts, crotches, and buttocks, particularly when it appeared that they were just about to undress. In one instance, when one victim had her back to him, defendant said, "`Turn around, look at me,'" although the victim could not hear him. When another victim kept a towel over her breasts, defendant similarly said, "`Let me see `em ... Fuck!'"
At some point on May 18, the water heater for the showers malfunctioned. A custodian at the high school entered a back room to fix it (or to let someone else in to fix it). From there, he could see defendant sitting in the coaches' office. He asked defendant what he was doing. Defendant grabbed his camera and fled. The custodian chased him but failed to catch him; defendant jumped over a fence and disappeared into the school grounds. The police were called and, with the assistance of a bloodhound, they found defendant hiding behind some bushes.
On defendant's home computer, the police found many photos of "females in various stages of undress," including minors. Some appeared to be aware that they were being photographed; others did not. An email stored on the computer suggested that defendant was a "contribut[or]" to a website called voyeurweb.com.

Issue and Discussion
As is pertinent here, section 311.4, subdivision (c) punishes anyone who "knowingly promotes, employs, uses, persuades, induces or coerces a minor ... to engage in ... either posing or modeling ... for purposes of preparing any ... videotape ... involving[ ] sexual conduct by a minor[.]" Defendant contends there is insufficient evidence to support his convictions of violating this section because *688 "the plain language of [the] section ... requires that the [victims] be engaged in posing or modeling at the direction of [defendant]." We disagree. As defendant himself cautions us, we may not "`"`rewrite a statute to make it express an intention not expressed therein"'"' or one that may be derived from its legislative history. (Unzueta v. Ocean View School District (1992) 6 Cal.App.4th 1689, 1697, 8 Cal. Rptr.2d 614.) Section 311.4, subdivision (c) says nothing about posing or modeling at the direction of the defendant and he has provided no legislative history suggesting that this was the statute's intent.
Defendant concedes that no published cases construing section 311.4, subdivision (c) have addressed the issue of what constitutes posing or modeling and none have involved a situation where there has been no personal interaction between a defendant and the victim(s). All that means is that this is an issue of first impression.
Defendant invites us to read the terms "posing" and "modeling" with the rest of the section. He correctly points out that the words, "employ", "persuade", "induce" and "coerce" all require some type of interaction between the defendant and the victim(s). However, the Legislature included as a way of violating the statute in addition to these, using a minor, which does not require such interaction.[3]
Defendant asserts that giving the term "using" such a meaning renders "employs", "persuades", "induces" or "coerces" superfluous and redundant. One can say the same of the terms "persuades" and "induces." There is simply nothing in the word "uses" that suggests some person-to-person interaction between defendant and the victim(s).[4]
The Legislature's intent in drafting section 311.4, subdivision (c) can also be gleaned by examining the other provisions that make up Penal Code chapter 7.5, of which it is a part.
Section 311.1 punishes the importation for sale or distribution or the in-state possession, preparation, publication, production, development, duplication or printing, with the intent to distribute,[5] exhibit or exchange, any obscene material, knowing that it depicts a minor personally engaging in or personally simulating the same sexual conduct covered by section 311.4, subdivision (c). Section 311.2, subdivision (b) is identical to section 311.1, except it adds "for commercial consideration." Subdivisions (c) and (d) are identical to section 311.2, subdivision (b), except they omit the reference to obscene material, and they require the intent to distribute, exhibit or exchange to be with an adult and minor, respectively.
Section 311.3, subdivision (a) punishes one who knowingly develops, duplicates, prints or exchanges materials that depict a minor engaged in an act of sexual conduct. However, the definition of sexual conduct is more narrow than it is in section 311.4 and does not include simulated sex acts *689 and lewd and lascivious acts under section 288.
Finally, section 311.11 punishes the knowing possession of matter, the production of which involved the use of a minor, knowing that it depicts a minor personally engaged in or simulating section 311.4 sexual conduct.
Section 311.4, subdivision (c), in contrast to all the other provisions in the chapter, clearly targets the person actually filming the pornographic material.[6]
In People v. Cochran (2002) 28 Cal.4th 396, 402, 121 Cal.Rptr.2d 595, 48 P.3d 1148, (Cochran) the California Supreme Court commented that section 311.4 "is part of a statutory scheme `"to combat the exploitive use of children in the production of pornography."' [Citation.] ... [¶] ... [¶] [S]ection 311.4, subdivision (b),[7] makes it a crime to persuade, induce, or permit a child to pose for commercial pornography. The statute does not govern the actual sale or distribution of child pornography, as that conduct is governed by section 311.2, 'subdivision (b).... Because [it] governs pornography distribution, it is subject to rigorous First Amendment scrutiny, which it satisfies by including an obscenity element. [¶1] [T]he Legislature's `dual approach' to regulating producers as well as distributors and retailers is necessary because, as one commentator notes, `[c]hild pornography is in essence a hybrid industry composed of first producers, who directly exploit children physically to create a pornographic product,[8] and secondly the close association of manufacturers, distributors, and retailers who cultivate and perpetuate the child pornography market, [¶] Regulation of both aspects ... must be dealt with individually and harmonized to provide the most powerful deterrent to the practice of child sexploitation.'"
Defendant took advantage of the fact that the victims were in a place where he knew they would expose themselves. Further, as the trial court concluded, he manipulated their environment so as to further take advantage of their vulnerability. In that regard, he posed them, without having to direct them in person. There is no logical link between such direction and the Legislature's purpose in enacting section 311.4, subdivision (c). As the Supreme Court noted in Cochran, section 311.4, and other provisions discussed above, are aimed at both the makers of materials that exploit minors and those that sell/distribute those materials.
Defendant posed the victims by herding them with the signs, cones and caution *690 tape to a position most favorable to filming, the same as if he had been in the room directing them to stand in front of the camera.[9]
Having so concluded, we necessarily also conclude that the Legislature did not intend to punish people who prey on children, as defendant did here, under section 647, subdivision (k),[10] which addresses the misdemeanor of being a "Peeping Tom" and applies to all victims, regardless of age.[11] Being a Peeping Tom does not require manipulation of the victims, as defendant did here. Moreover, at the time defendant committed these crimes, there was no subsection of section 647, subdivision (k) which applied to the filming defendant engaged in here.[12]

Disposition
The judgment is affirmed.
I concur: MILLER, J.
*691 RICHLI, J.
I must respectfully dissent.
I am at a loss to find any portion of the majority opinion that explains in what way the minors in this case were "engag[ing] in ... posing or modeling." In fact, as the evidence shows," they were not. Hence, there was insufficient evidence that defendant "promote[d], employ[ed], use[d], persuade[d], induce[d], or coerce[d]" them to engage in posing or modeling, as Penal Code section 311.4, subdivision (c) would require.
The majority's failure to address this point cannot be ascribed to defendant's failure to raise it. As the majority recognizes (maj. opn., ante, at pp. 687-688), defendant argues that Penal Code section 311.4, subdivision (c) "requires that the minors be engaged in posing or modeling at the direction of the accused." (Capitalization altered.) This is a double-barreled argument: (1) the minors must be engaged in posing or modeling, and (2) they must do so at the direction of the accused. Defendant notes that "[t]here has been no California decision which has construed the meaning of `posing' or `modeling.'" He then argues that the trial court's interpretation of the statute "entirely ignores the requirement of posing and modeling." The majority merely spikes the second barrel of his argument, while leaving the first barrel hanging fire.
"`Our role in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning.' [Citation.]" (People v. Wright (2006) 40 Cal.4th 81, 92, 51 Cal.Rptr.3d 80, 146 P.3d 531, quoting Alford v. Superior Court (2003) 29 Cal.4th 1033, 1040, 130 Cal.Rptr.2d 672, 63 P.3d 228.)
The only definition of "pose" that is relevant here is "[t]o assume a certain position, pose, or attitude, esp. in order to be drawn, painted, or photographed." (Oxford English Diet. (2006 draft rev.) [as of June 12, 2007].) Similarly, the only relevant definition of "model" is "[t]o act as a model by posing for an artist or sculptor, or by wearing clothes for display." (Oxford English Diet. (2002 draft rev.) [as of June 12, 2007].)
Posing and modeling both require that the subject intentionally assume a certain position. They also both require that the subject knowor at least contemplate the possibilitythat he or she is being observed. An inanimate object cannot pose or model. Defense counsel made this point succinctly below: "[O]ne can say `A ship is a model for a drawing,' but one does not say `A ship is modeling for a drawing.'" Similarly, a person going about his or her business, without knowingly posing or modeling, simply is not posing or modeling at all. Otherwise, we would all be posing and modeling all the time; these statutory words would be rendered meaningless. If this was what the Legislature really had in mind, it would have omitted the words "posing or modeling" entirely; it would have merely required that the minor engage in sexual conduct.
As the People point out, "pose" can also mean "[t]o place in a certain attitude or position, esp. to be painted or photographed; to cause to adopt a certain pose." (Oxford English Diet. (2006 draft rev.) [as of June 12, 2007].) The majority therefore states that "[defendant posed the victims by herding them with *692 the signs, cones and caution tape to a position most favorable to filming...." (Maj. opn., ante, at pp. 689-690, italics added.) This, however, is the transitive meaning of "pose"; the statute is plainly using the intransitive meaning.
As we all learned in high school, a transitive verb has a direct object. For example, in the sentence, "John wrote a check," "wrote" is transitive. An intransitive verb has no direct object. For example, in the sentence, "Joan wrote beautifully," "wrote" is intransitive. Some verbs are exclusively transitive and some are exclusively intransitive, but oftenlike "wrote"they can be used either way.
Here, the statute requires that the defendant must promote, employ, use, persuade, induce, or coerce the minor to engage in posing. The defendant need not pose the minor (transitive); however, the minor must pose (intransitive). If the Legislature wanted the statute to be triggered when the defendant merely poses the child, it could easily have written it that way. "We presume the Legislature knew what it was saying and meant what it said. [Citation.]" (Ramos v. Superior Court (2007) 146 Cal.App.4th 719, 727, 53 Cal.Rptr.3d 189.) Accordingly, the transitive meaning of "pose"to place another person or thing in a certain positionis irrelevant. The only relevant meaning of "pose" is the one I quoted earlier, which is intransitiveto assume a certain position, especially to be drawn, painted, or photographed. This meaning is supported by the rules of statutory construction, as well as the rules of grammar.
The majority reasons, in part, that Penal Code section 311.4, unlike the other statutes that make up Chapter 7.5 of the Penal Code, "targets the person actually filming the pornographic material." (Maj. opn., ante, at p. 689, italics omitted.) That is not entirely correct. While Penal Code sections 311.1 and 311.2 do not apply to defendant, they can apply to a person who either "prepares" or "produces" child pornography. (Pen.Code, §§ 311.1, subd. (a), 311.2, subds. (b), (e) & (d).) By contrast, Penal Code section 311.4, subdivision (c) applies to anyone who "promotes, employs, uses, persuades, induces, or coerces a minor ... to engage in ... either posing or modeling ... for purposes of preparing any ... image ... involving[ ] sexual conduct by a minor...." The person need not actually film the minor, nor have any other role in preparing or producing the child pornography. Thus, Penal Code section 311.4, subdivision (c) does not target the person who films the minor, as such; rather, it targets the person who causes the minor to participate.
The defendant's causation must consist of either "promot[ing]" "employ[ing]," "us[ing]," "persuad[ing]," "inducting]," or "coerc[ing]." I do not agree with defendant that such causation must rise to the level of directing the minor's activity. I do agree, however, that the statute requires some interaction, albeit perhaps only indirectly, between the defendant and the minor; I simply cannot imagine how one could "use" (much less "promote") someone to do something without interacting with them somehow. The minor's participation, however, must consist of engaging in either "posing" or "modeling." By using these terms, the Legislature evidently intended to require that the minor's participation be at least minimally knowing.
In sum, I would find defendant's use of signs, cones, and tape to be sufficient interactionif it caused the minors to engage in either posing or modeling. The evidence, however, demonstrated conclusively that the minors did not pose or model.
Defendant did "use" the minors for his own sexual gratification. He is undoubtedly *693 guilty of some crime or crimes under Chapter 7.5 (see, e.g., Pen.Code, § 311.11, subd. (a)), as well as of "peeping" under Penal Code section 647, subdivision (k). However, he is not guilty under Penal Code section 311.4, subdivision (c). While his actions were repulsive and vile, it is not up to us to rewrite statutes to make them say what we think they ought to have said; that is the Legislature's exclusive prerogative. I would reverse his convictions under that statute. Because his burglary convictions were based on the theory that he entered the locker room with the intent to violate Penal Code section 311.4, subdivision (c), I would also reverse those convictions, as based on insufficient evidence.
NOTES
[1] All further statutory references will be to the Penal Code, unless otherwise indicated
[2] Below, defendant stipulated that the facts stated in the police report were true. However, those reports are not in the record before this court. The probation report summarizes those facts. Therefore, the report and the testimony at trial serve as the basis for our statement of facts.
[3] Neither does promoting.
[4] Defendant contends that it is "clear" from the context that "uses" was reserved for those situations in which the victim was "duped" into performing acts he/she would not otherwise partake in. However, "induces" and "persuades" would cover that.
[5] The dissent states that Sections 311 and 311.2 may also apply to one like defendant, who films child pornography. (Dis. opn., post, at p. 692.) However, section 311 requires that the film maker also have the intent to distribute, which section 311.4 does not. Section 311.2 requires that the film be made for commercial consideration and subdivisions (c) and (d) also require an intent to distribute, exhibit or exchange, which section 311.4 does not.
[6] Section 311.4,'subdivision (a) is aimed at a defendant who uses, hires or employs a minor to do/assist in doing the acts described in section 311.2, which, as already stated, covers obscene matter and includes an intent to distribute or exchange. Subdivision (b) attaches to subdivision (c) the provision that it was done for a commercial purpose.
[7] See footnote 6, ante.
[8] Thus, we reject defendant's contention that section 311.4 is aimed at punishing only those who coerce minors into engaging in sexual acts. Further support for our position can be found in People v. Kongs (1994) 30 Cal. App.4th 1741, 1753-1754, 37 Cal.Rptr.2d 327 wherein the Court of Appeal said of section 311.4, subdivision (c), "`The pornographic photographer subordinates the humanity of his subject to the sexuality of the subject' and makes his subject `a mere means [of] serving the voyeur's purposes.' [Citation.] [11] [S]tates may legitimately protect the dignity and psychological well-being of children by forbidding child pornography. [T]he Legislature could reasonably conclude that such photography is unacceptable if the photographer obtains his pictures by exploiting his subject and reducing the child to a sexual object in order to satisfy the cravings of an audience of pedophiles. A child should not have to face a lifetime of knowing that a permanent record has been made of his or her abasement."
[9] The dissent criticizes our opinion for failing to address whether the victims were engaged in posing or modeling. (Dis. opn., post, at p. 691.) In concluding that defendant posed them, we necessarily conclude they were. The dissent also criticizes our reliance on the "transitive" rather than the "intransitive" meaning of "pose." (Dis. opn., post, at pp. 691-692.) The dissent offers no basis, other than its unsupported belief, that in drafting section 311.4, subdivision (c), the Legislature intended to use the "intransitive" rather than the "transitive" meaning of "pose."

The dissent states that the victim must intentionally assume a certain position. (Dis. opn., post, at p. 691.) The victims here did. There was no evidence that any of them were sleep walking or were so incapacitated that they did not realize that they were exposing themselves.
[10] At the time these offenses occurred, subdivision (k)(1) provided, "Any person who looks through a hole or opening, into, or otherwise views, by means of any instrumentality, including, but not limited to, a periscope, telescope, binoculars, camera, motion picture camera, or camcorder, the interior of a bathroom, changing room, fitting room, dressing room, or tanning booth, or the interior of any other area in which the occupant has a reasonable expectation of privacy, with the intent to invade the privacy of a person or persons inside. This subdivision shall not apply to those areas of a private business used to count currency or other negotiable instruments."

Subdivision (k)(2) stated, "Any person who uses a concealed camcorder, motion picture camera, or photographic camera of any type, to secretly videotape, film, photograph, or record by electronic means, another, identifiable person under or through the clothing being worn by that other person, for the purpose of viewing the body of, or the undergarments worn by, that other person, without the consent or knowledge of that other person, with the intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of that person and invade the privacy of that other person, under circumstances in which the other person has a reasonable expectation of privacy."
[11] Defendant states that in 1996, a legislator proposed a bill to make a violation of section 647, subdivision (k) either a felony or a misdemeanor while suggesting that committing the acts proscribed in that section on a child could only result in a misdemeanor. We do not accept this legislator's evaluation as gospel. Nor do we agree with defendant that the fact that the bill was not enacted (and he does not say how this occurred) meant somehow that the Legislature has made a determination to treat defendant as a misdemeanant.
[12] Section 647, subdivision (k)(3)(A) was added the year after these crimes were committed. It provides, "Any person who uses a concealed camcorder, motion picture camera, or photographic camera of any type, to secretly videotape, film, photograph, or record by electronic means, another, identifiable person who may be in a state of full or partial undress, for the purpose of viewing the body of, or the undergarments worn by, that other person, without the consent or knowledge of that other person, in the interior of a bedroom, bathroom, changing room, fitting room, dressing room, or tanning booth, or the interior of any other area in which that other person has a reasonable expectation of privacy, with the intent to invade the privacy of that other person."