Filed 3/10/14  P. v. Benitez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039037 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1109025) |
| v. | |
| YOBEB BENITEZ, | |
| Defendant and Appellant. | |

## I.     INTRODUCTION

Defendant Yobeb Benitez was convicted, by court trial, of one count of aggravated sexual assault of a child (Pen. Code, § 269[1]), one count of false imprisonment by violence (§§ 236, 237), nine counts of committing a forcible lewd act on a child (§ 288, subd. (b)(1)), and eight counts of employing a minor in the production of material depicting sexual conduct by a minor under the age of 14 (§ 311.4, subds. (c) & (f)).  He was sentenced to an indeterminate term of 15 years to life, consecutive to a determinate term of 82 years 4 months.

On appeal, defendant contends:  (1) his sentence for false imprisonment must be stayed pursuant to section 654 because it was the means by which he committed the aggravated sexual assault; (2) there is insufficient evidence to support his eight

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

convictions of employing a minor in the production of material depicting sexual conduct by a minor because there was no evidence that the victim "engage[d] in either posing or modeling" (§ 311.4, subd. (c)); and (3) there is insufficient evidence to support four of his convictions of committing a forcible lewd act on a child (counts 4 through 7) because those counts were based on the victim's generic testimony. Defendant also challenges the sufficiency of the evidence as to several of his other forcible lewd act convictions.

We agree that defendant's sentence for false imprisonment must be stayed pursuant to section 654. We determine that defendant's convictions of violating section 311.4, subdivision (c) are supported by substantial evidence because the trial court could have found that defendant used or permitted the victim to "assist [him] to engage in either posing or modeling" in preparing photographs that depicted him engaging in sexual conduct with the victim. Finally, we find the evidence sufficient to sustain defendant's convictions of forcible lewd acts in counts 4 through 7 and count 20, but we find that there was not substantial evidence to support defendant's convictions of forcible lewd acts in counts 21 through 23. We will modify the judgment to stay the term for false imprisonment (count 2) and to reduce the forcible lewd act convictions in counts 21 through 23 to non-forcible lewd acts (§ 288, subd. (a)), and we will remand for resentencing.

## II.   BACKGROUND

Defendant lived with the victim, Y., and her family, which included her mother and four siblings. Defendant was her mother's boyfriend, and he is the father of Y.'s youngest sibling. Y. called defendant her stepdad. Y. was 13 years old at the time of trial in September 2013. Defendant was 30 years old.

### A. Trial Evidence

#### 1. Y.'s Initial Disclosures

On June 9, 2011, Y. told her friend Jose that defendant had used a knife to threaten her and her family. Y. said that defendant had also "touched her" when she was in first grade. Jose told some friends to look for the school principal.

Y. approached the school principal, accompanied by Jose and another friend. She was crying hysterically and told the principal that defendant had put a knife to her stomach the previous night. The principal calmed Y. down and brought her to the principal's office. There, Y. provided additional details of the incident, explaining that defendant had asked her to get some scissors, then locked her in a bedroom and put a knife to her stomach. When Y. told him to stop, defendant said, " 'You have to' " and then put his hands down her pants. When she again told him to stop, he said, " 'you need to do this, otherwise, I'm going to hurt your family.' " Defendant also told Y. that he had naked photographs of her and that he would put the photographs on the Internet.

After the school principal called 9-1-1, police and social services came and interviewed Y., who again described how defendant held a knife against her stomach. Y. said that defendant told her he "wanted something," and that "it was gonna happen like three times." He had put his hand or fingers inside of her and said he had pictures on his computer, showing her naked and asleep, which he would post online.

Y. also said that defendant had been inside her room one night the previous week. She bit his hand because he was touching her private parts.

Y. reported that defendant had begun touching her when she was 11 and that it had happened about 10 times. Defendant had threatened her and her family, telling her that if she called the police, he would come back and "track [her] down" after he got out of jail. He would then rape her.

### 2.     Y.'s Trial Testimony

Y. testified that defendant had started molesting her when she was nine years old. He would come into her bedroom "every night." He would touch her vagina and breasts with his fingers. He had also slapped her buttocks once and had put his mouth on her breasts "[o]nce." Y. described the time that defendant put his mouth on her breasts: "he was in his room and he called me over there and he lifted up my shirt and he put his mouth on my breast." Y. described how defendant "sucked on" her breast and how she was too uncomfortable to try to make him stop.

Y. was afraid of defendant because on one occasion, he had accused her of telling her mother that defendant "had a Facebook," then slapped her. Defendant told Y. that if he lost contact with his daughter, he would "come back and he was going to rape [her]." He also told Y. that he was "going to do something" to her mother.

The incident on June 8, 2011 began when defendant told Y. that he needed scissors. She went into the master bathroom to look for scissors, and defendant then locked the door and put a knife to her stomach. When Y. told defendant to let her go, defendant said he was going to touch her first. He then touched her, and his finger went into her vagina. Defendant also told her he had pictures of her in his computer, and he asked if she wanted all of her friends to see them.

### 3.     Photographs

On June 9, 2011, the day of Y.'s initial disclosure, Deputy Probation Officer Andy Rubi went to Y. and defendant's home to perform a probation compliance search on Y.'s older brother. Defendant answered the door, identified himself, said he was on probation also, and said he had a knife. The officer conducted a pat-search and recovered the knife. A computer from the residence was seized that day, and it was later subjected to a forensic examination.

Police officers discovered hundreds of photographs on defendant's computer. Some of the photographs depicted defendant putting his penis into Y.'s vagina, putting

4

his penis into Y.'s anus, and putting his tongue into Y.'s vagina. Other photographs showed defendant touching Y.'s breast, touching her vagina, and licking her anus. In many of the photographs, Y.'s shirt was pulled up and her pants and underwear were pulled down. Y. was apparently sleeping when all of the photographs were taken. Some of the photographs appear to have been taken while defendant was wearing a headlamp. When shown the photographs, Y. stated that she "didn't know how that happened."

### B. Charges, Verdicts, and Sentencing

A second amended consolidated information (hereafter, the information) charged defendant with 13 counts of aggravated sexual assault of a child (counts 1, 8-19; § 269), one count of false imprisonment by violence (count 2; §§ 236, 237), nine counts of committing a forcible lewd act on a child (counts 3-7, 20-23; § 288, subd. (b)(1)), and eight counts of employing a minor in the production of material depicting sexual conduct by a minor under the age of 14 (counts 24-31; § 311.4, subds. (c) & (f)).

The aggravated sexual assault of a child charged in count 1 and the false imprisonment charged in count 2 were based on the incident in June of 2011 when defendant put his fingers into Y.'s vagina after holding a knife to her stomach. The other 12 counts of aggravated sexual assault (counts 8-19) were based on some of the acts depicted in the photographs—specifically, digital penetrations of Y.'s vagina, digital penetrations of Y.'s anus, oral copulations of Y.'s vagina, oral copulations of Y.'s anus, rapes, and sodomies.

The forcible lewd act charged in count 3 was based on the incident when Y. bit defendant's hand after he touched her. The forcible lewd acts charged in counts 4 through 7 were based on Y.'s testimony about defendant coming into her bedroom to touch various parts of her body and put his mouth on her breasts. The forcible lewd acts charged in counts 20 through 23 were based on two instances in which defendant sucked Y.'s breast and two instances in which defendant touched Y.'s buttocks with his mouth and tongue.

5

The eight counts of employing a minor in the production of material depicting sexual conduct by a minor under the age of 14 (counts 24-31) were based on photographs that showed defendant engaging in sexual intercourse with Y., engaging in sodomy with Y., digitally penetrating Y.'s vagina, digitally penetrating Y.'s anus, orally copulating Y.'s vagina, orally copulating Y.'s anus, sucking and touching Y.'s breast, and touching Y.'s buttocks with his mouth and tongue.

Defendant waived his right to a jury trial. At the court trial, he presented no evidence. The trial court found him not guilty of the 12 counts of aggravated sexual assault of a child charged in counts 8 through 19, finding that he had not used force since Y. was asleep during the acts. The trial court convicted defendant of all the other counts.

At sentencing, the trial court imposed an aggregate determinate prison term of 82 years 4 months, with a consecutive indeterminate term of 15 years to life for the aggravated sexual assault (§ 269) charged in count 1. The determinate term consisted of the 10-year upper term for the forcible lewd act (§ 288, subd. (b)) charged in count 3, consecutive eight-year terms for the other eight forcible lewd act counts (*ibid.*), a consecutive three-year term for the false imprisonment (§§ 236, 237), and consecutive eight-month terms for the eight violations of section 311.4, subdivision (c).

### III.    DISCUSSION

#### A.    *Section 654*

Defendant contends his three-year sentence for false imprisonment (count 2) must be stayed because it was the means by which he committed the aggravated sexual assault (count 1), for which he received an indeterminate sentence of 15 years to life.

#### 1.    Legal Background

Subdivision (a) of section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case

6

shall the act or omission be punished under more than one provision. . . ." The purpose of the statute is to ensure that the punishment is commensurate with the defendant's culpability. (*People v. Perez* (1979) 23 Cal.3d 545, 550-551 (*Perez*).)

"The proscription against double punishment in section 654 is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654. The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one." (*People v. Bauer* (1969) 1 Cal.3d 368, 376 (*Bauer*).) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he [or she] may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*Perez, supra,* 23 Cal.3d at p. 551, fn. omitted.)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) On appeal we defer to express or implicit determinations that are based upon substantial evidence. (Cf. *People v. Osband* (1996) 13 Cal.4th 622, 730-731.)

### 2. Analysis

Relying primarily on *People v. Latimer* (1993) 5 Cal.4th 1203 (*Latimer*), defendant contends that his sole "object or intent in imprisoning Y. in the bathroom was to facilitate his sexual assault of her."

In *Latimer, supra,* 5 Cal.4th 1203, the defendant kidnapped his victim, drove her to the desert, and raped her. (*Id.* at p. 1205.) Ultimately, the California Supreme Court held that section 654 applied, explaining "[a]lthough the kidnapping and the rapes were

7

separate acts, the evidence does not suggest any intent or objective behind the kidnapping other than to facilitate the rapes." (*Id.* at p. 1216.) The Supreme Court noted that because the kidnapping was incident to the defendant's objective of rape, he could be sentenced only for rape and not for kidnapping. (*Ibid.*)

The Attorney General does not attempt to distinguish *Latimer.* Instead, the Attorney General contends that the crime of false imprisonment was "complete" before defendant committed the sexual assault and thus that substantial evidence supports the trial court's implied finding that defendant had separate objectives in committing the false imprisonment and the sexual assault. However, "[t]he fact that one crime is technically complete before the other commenced does not permit multiple punishment where there is a course of conduct comprising an indivisible transaction. [Citations.]" (*Bauer, supra,* 1 Cal.3d at p. 377.)

We agree with defendant that the evidence does not support a finding that there was a dual objective here. The record indicates that, when he locked himself in the bathroom with Y. and put a knife to her stomach, defendant had no other objective besides committing the sexual assault. He specifically told Y. he would only let her go after he touched her. We conclude this course of conduct falls within the scope of section 654 and that the trial court therefore erred in imposing separate terms for counts 1 and 2. We will direct the court to stay the term imposed on count 2.

### B.    *Section 311.4, Subdivision (c) Convictions*

Defendant contends that there is insufficient evidence to support counts 24 through 31—his eight convictions of employing a minor in the production of material depicting sexual conduct by a minor in violation of section 311.4, subdivision (c). He claims there was no evidence that Y. "engage[d] in either posing or modeling." (§ 311.4, subd. (c).)

### 1. Standard of Review

Under the federal Constitution's due process clause, there is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) In addressing a claim of insufficient evidence, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 (*Johnson*).)

### 2. Legal Background

Section 311.4, subdivision (c) states, in relevant part: "Every person who, with knowledge that a person is a minor under the age of 18 years[ ] . . . knowingly promotes, employs, uses, persuades, induces, or coerces a minor under the age of 18 years, or any parent or guardian of a minor under the age of 18 years under his or her control who knowingly permits the minor, . . . *to engage in or assist others to engage in either posing or modeling* alone or with others for purposes of preparing any representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, . . . or any other computer-generated image that contains or incorporates in any manner, any film, filmstrip, or a live performance involving, sexual conduct by a minor under the age of 18 years alone or with other persons or animals, is guilty of a felony. It is not necessary to prove commercial purposes in order to establish a violation of this subdivision." (Italics added.)

"Enacted in 1961, section 311.4 is part of a statutory scheme ' "to combat the exploitive use of children in the production of pornography." ' [Citation.] The statute is 'aimed at extinguishing the market for sexually explicit materials featuring children.' [Citation.]" (*People v. Cochran* (2002) 28 Cal.4th 396, 402 (*Cochran*).) In *Cochran,* our

9

Supreme Court set forth the elements of a violation of section 311.4, subdivision (b): "[T]he defendant must: (1) knowingly have caused a child, (2) who is known or should be known to be a child, (3) *to participate in the production of any representation of sexual conduct by a child,* (4) for commercial purposes." (*Id.* at p. 401, italics added.) The court observed that subdivision (c), at issue here, "is substantially identical" to subdivision (b) other than the absence of the requirement that the defendant have a commercial purpose. (*Ibid.*)

The Fourth District, Division Two considered the meaning of "to engage in . . . posing or modeling," as used in section 311.4, subdivision (c), in *People v. Hobbs* (2007) 152 Cal.App.4th 1 (*Hobbs*). In that case, the defendant was convicted of 40 counts of violating section 311.4, subdivision (c) for filming "girls who were competing in [a] swim meet as they changed into and out of their bathing suits" in a school locker room. (*Id.* at pp. 3, 4.) The defendant videotaped the girls, without their knowledge, from a coaches' office adjacent to the locker room. (*Id.* at p. 4.) Prior to the scheduled swim meet, the defendant had surreptiously entered the locker room and set out cones, caution tape, and signs "to block off rows of lockers that were outside his camera range." (*Ibid.*)

The *Hobbs* majority rejected the defendant's contention that his actions did not constitute a violation of section 311.4, subdivision (c) because the statute " 'requires that the [victims] be engaged in posing or modeling at the direction of [the defendant].' " (*Hobbs, supra,* 152 Cal.App.4th at p. 5.) The court first concluded that "using" a minor does not require "person-to-person interaction between the defendant and the victim(s)." (*Id.* at pp. 5-6, fn. omitted.) Second, the court held that because the defendant "posed the victims by herding them with the signs, cones and caution tape to a position most favorable to filming," the minors necessarily were "posing or modeling." (*Id.* at p. 8 & fn. 9.) The majority determined that the statute was satisfied because the girls had intentionally assumed the positions in which they were filmed, despite their ignorance regarding the filming. (*Ibid.*)

10

The dissent in *Hobbs* reached a different conclusion: "Posing and modeling both require that the subject intentionally assume a certain position. They also both require that the subject know—or at least contemplate the possibility—that he or she is being observed. . . . [A] person going about his or her business, without knowingly posing or modeling, simply is not posing or modeling at all. Otherwise, we would all be posing and modeling all the time[.]" (*Hobbs, supra,* 152 Cal.App.4th at p. 10 (dis. opn. of Richli, J.).) The dissent further concluded, "the statute requires that the defendant must promote, employ, use, persuade, induce, or coerce the minor to engage in posing. The defendant need not pose the minor (transitive); however, the minor must pose (intransitive)." (*Ibid.*) Thus, the dissent concluded "that the statute requires *some* interaction, albeit perhaps only indirectly, between the defendant and the minor" such that the minor "engage in either posing or modeling." (*Id.* at p. 11 (dis. opn. of Richli, J.).)

### 3.    The Parties' Contentions

Defendant contends *Hobbs* is distinguishable because in that case, the minors knew they were exposing themselves and had intentionally assumed their positions; they had not been "sleepwalking or . . . so incapacitated that they did not realize that they were exposing themselves." (*Hobbs, supra,* 152 Cal.App.4th at p. 8, fn. 9.) Defendant points out that "Here, in contrast, there was no evidence that Y. knew she was exposing herself or participating in any sexual acts with [defendant]. She testified that she was asleep and was unaware that [defendant] was filming her or touching her in any way."[2]

Alternatively, defendant urges us not to follow the *Hobbs* majority opinion and to instead agree with the dissent in that case. He contends that under the reasoning of the *Hobbs* dissent, "there was no evidence that [Y.] 'engaged' in 'posing' or 'modeling.' "

_____

[2] Below, defendant made a similar argument but framed it in terms of due process. He argued that "the element of participation has not been proven in this particular case."

The Attorney General contends that a violation of section 311.4, subdivision (c) does not require that the victim "pose or model at all." The Attorney General asserts that defendant may be found guilty under that statute because he "positioned [Y.] so he could perform sexual acts with her and to photograph those acts for his later viewing pleasure. In doing so, he 'used' her to gratify his own sexual deviancy."[3]

### 4. Analysis

In determining whether the evidence supports defendant's convictions of violating section 311.4, subdivision (c), both parties have assumed that the statute requires the minor to be the one who "engage[s] in . . . posing or modeling." (§ 311.4, subd. (c).) However, that is not all the statute prohibits: it also applies when the minor "assist[s] others to engage in either posing or modeling." (*Ibid.*)

Here, defendant was the one who "engage[d] in . . . posing or modeling." (§ 311.4, subd. (c).) As noted above, each count of violating section 311.4, subdivision (c) was based on a photograph in which defendant was depicted committing a particular sexual act on Y. Defendant "intentionally assume[d]" various positions in which he and Y. were filmed. (*Hobbs, supra,* 152 Cal.App.4th at p. 8 & fn. 9.) Even if, on this record, the trial court could not have found that Y. herself "engage[d] in . . . posing or modeling" because she was asleep at the time the photographs were taken, the trial court could find that defendant violated the statute because he used or permitted Y. to "assist" *him* in "posing or modeling." (§ 311.4, subd. (c).)

Our application of the statute to the facts of this case effectuates the Legislature's intent to " ' "combat the exploitive use of children in the production of pornography." ' " (*Cochran, supra,* 28 Cal.4th at p. 402.) Here, defendant photographed himself while he was engaged in explicit sexual activities with a minor. Defendant's behavior satisfied all

---

[3] The prosecutor's argument below was similar. He argued, "There's no requirement that the victim actually engaged in those sexual acts as a participant. . . . [S]he just has to be there and the defendant has to be doing the sexual acts on her . . . ."

12

of the elements of a violation of section 311.4, subdivision (c) as set forth in *Cochran*:  he "(1) knowingly . . . caused a child, (2) who is known or should be known to be a child, (3) to participate in the production of any representation of sexual conduct by a child." (*Id.* at p. 401.)  We therefore conclude that counts 24 through 31 are supported by substantial evidence.  (See *Johnson, supra,* 26 Cal.3d at p. 578.)

### C.  *Counts 4 Through 7*

Defendant contends there is insufficient evidence to support four of his nine convictions of committing a forcible lewd act on a child (counts 4-7) because those counts were based on Y.'s "generic testimony."  (See *People v. Jones* (1990) 51 Cal.3d 294, 308 (*Jones*).)

### 1.  Proceedings Below

As noted above, Y. testified that defendant molested her starting when she was nine years old.  He would come into her bedroom "every night."  He had performed four separate kinds of acts:  he had touched her vagina, touched her breasts, slapped her buttocks, and put his mouth on her breasts once.  He had touched her breasts and vagina more than once, and he had performed the other acts once each.  When Y. was initially interviewed, she reported that defendant had touched her about 10 times.

During argument to the court, the prosecutor referred to counts 4 through 7 as the "weakest counts" and suggested that if the trial court wanted to acquit defendant of any counts, it would be those four counts.

In finding defendant guilty of counts 4 through 7, the trial court stated that the basis for its verdicts was "the testimony described above for Count three."  In finding defendant guilty of count 3, the trial court had described Y.'s testimony as follows:  "Y[.] testified the defendant came into her room every night and would touch her breasts, lick and/or suck her breasts and/or touch or rub her vagina over her clothing.  She pretended to be asleep when he entered the bedroom.  [¶]  Other times, he entered the bedroom when she was trying to sleep.  She would turn away when he touched her.  She testified

13

she was fearful of the defendant from the first time, . . . up to the present. She feared the defendant even at the time of her testimony at the trial. [¶] The court has reviewed photographic images that depict the defendant performing acts of touching, licking and sucking of the breasts, buttocks and vagina of the victim. It cannot be determined whether the victim is asleep in the images or pretending to be asleep. [¶] However, whether she is asleep or not, the images corroborate the testimony of Y[.] The court did not rely on any of the images to prove the allegations in this count. [¶] Based upon the testimony of Y[.], which the court finds credible, the defendant touched, licked or sucked the breasts, buttocks and vagina of the victim on numerous occasions."

## 2. Legal Background

In *Jones, supra,* 51 Cal.3d 294, the California Supreme Court held that the particular details of a charge of child molestation are not elements of the offense and are not necessary to sustain a conviction. Rather, "[t]he victim . . . must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping'). Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Id.* at p. 316.)

14

### 3.    Analysis

In her testimony, Y. was specific as to "the kind of act or acts committed," in that she stated that defendant touched her breasts and vagina, put his mouth on her breasts, and slapped her buttocks.  (See *Jones, supra,* 51 Cal.3d at p. 316, italics omitted.)  Y. was also specific about "the number of acts committed," in that she stated that defendant touched her breasts and vagina more than once, but touched her buttocks and mouthed her breast only one time each.  (See *ibid.,* italics omitted.)  She had also reported that defendant had molested her about 10 times total since she had turned 11.  Finally, Y. described "the general time period in which these acts occurred," by testifying that the abuse began when she was nine years old.  (See *ibid.,* italics omitted.)  Under *Jones,* this evidence was sufficient to sustain the four forcible lewd act convictions in counts 4 through 7.

### D.    *Counts 20 Through 23*

We requested supplemental briefing in which we asked the parties to discuss the evidence supporting defendant's convictions of forcible lewd acts (§ 288, subd. (b)(1)) in counts 20 through 23.   In his response to that supplemental briefing, defendant "questions the sufficiency of the evidence" as to counts 22 and 23, in which the prosecution alleged that defendant touched Y.'s buttocks with his mouth and tongue, noting, "Y. did not testify that appellant touched her buttocks with his mouth and tongue."  Defendant does not explicitly challenge the sufficiency of the evidence supporting counts 20 and 21, in which the prosecution alleged that defendant sucked Y.'s breasts, but defendant notes that Y. testified that defendant touched her breast with his mouth only once.

The Attorney General contends the evidence was sufficient to support counts 20 through 23.  The Attorney General acknowledges that Y. did not testify as to some of the acts that were alleged as the basis for counts 20 through 23, and that the prosecutor argued that counts 20 through 23 were "documented" in the photographs.  According to

the Attorney General, the trial court may have concluded that Y. did not testify about those acts because "she did not wish to recall the details of being molested," due to her fear of defendant. The Attorney General asserts that the evidence supporting counts 20 through 23 was "corroborated" by the photographs.

### 1. Proceedings Below

As noted above, defendant was charged with nine counts of committing a forcible lewd act on a child. (§ 288, subd. (b)(1).) In the second amended consolidated information, the prosecution did not allege any specific acts as the basis for counts 3 through 7. However, the prosecution did allege specific acts as the basis for counts 20 through 23: count 20 was based on the first time he sucked Y.'s breasts, count 21 was based on the last time he sucked Y.'s breasts, count 22 was based on the first time he touched Y.'s buttocks with his mouth and tongue, and count 23 was based on the last time he touched Y.'s buttocks with his mouth and tongue.

During argument, the prosecutor told the trial court that counts 20 through 23 were "documented" in the binder of photographs that depicted defendant committing various lewd acts on Y.

In finding defendant guilty of counts 20 through 23, the trial court stated that the basis for its verdicts was "the testimony described above for Count three." As noted above, in finding defendant guilty of count 3, the trial court had described Y.'s testimony and the photographs. The trial court found that the photographs corroborated Y.'s testimony, and the court specified that it "did not rely on any of the images to prove the allegations . . . ."

### 2. Analysis

Section 288 differentiates between lewd acts (§ 288, subd. (a)) and lewd acts accomplished "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person" (*id.*, subd. (b)(1)). In order to be convicted of committing a lewd act by force, the defendant must have used force that was

16

" 'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' [Citation.]" (*People v. Soto* (2011) 51 Cal.4th 229, 242.)  A defendant commits a lewd act by use of duress if he or she accomplishes the act by making " ' "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." ' [Citation.]" (*Id.* at p. 246, italics and fn. omitted.)

We have reviewed Y.'s testimony and the binder containing hundreds of photographs depicting defendant engaging in various lewd acts upon Y.  As the trial court found, it appears Y. is asleep or pretending to be asleep during all the acts depicted in the photographs.  If Y. was naturally asleep at the time defendant committed the lewd acts depicted in the photographs, defendant did not accomplish them by means of force or duress.  (See *People v. Kusumoto* (1985) 169 Cal.App.3d 487, 494 [insufficient evidence to support conviction of forcible penetration "where the victim was penetrated while asleep"]; *People v. Lusk* (1985) 170 Cal.App.3d 764, 770 & fn. 9 [upholding conviction of forcible lewd act where defendant caused the victim "to be drugged to unconsciousness to prevent his resistance"].)

As defendant points out, Y.'s generic testimony did not include any description of defendant touching Y.'s buttocks with his mouth and tongue.  Because Y.'s testimony was not sufficiently specific to assure that such conduct occurred while she was awake and conscious, it was insufficient to support defendant's forcible lewd act convictions in counts 22 and 23.  (See *Jones, supra,* 51 Cal.3d at p. 316.)  Likewise, Y. only described one instance in which defendant put his mouth on her breasts, and thus her testimony was sufficient to support only one of his two forcible lewd act convictions in counts 20 and 21.

However, Y.'s testimony, in combination with the many photographs, does establish that defendant touched Y.'s buttocks with his mouth and tongue on at least two occasions and that defendant sucked Y.'s breasts at least twice (§ 288, subd. (a)), and that he used force on one occasion in which he sucked her breasts (§ 288, subd. (b)). Because no substantial evidence supports a finding that defendant committed a second act of sucking Y.'s breasts by the use of force or duress, or that defendant used force or duress on any of the occasions when he touched Y.'s buttocks with his mouth, we will reduce counts 21 through 23 to reflect convictions of non-forcible lewd acts under section 288, subdivision (a). (See *People v. Navarro* (2007) 40 Cal.4th 668, 671 ["an appellate court that finds that insufficient evidence supports the conviction for a greater offense may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser included offense"].)

## IV.   DISPOSITION

The judgment is reversed and the matter is remanded for resentencing. Defendant's convictions of forcible lewd acts (§ 288, subd. (b)(1)) in counts 21 through 23 are reduced to violations of section 288, subdivision (a). Upon remand, the trial court is directed to stay the sentence for false imprisonment (count 2; §§ 236, 237) pursuant to section 654, and to resentence defendant.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

MÁRQUEZ, J.

_____

GROVER, J.

19