Filed 1/21/25  P. v. Magallon CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MANUEL NAVARRO MAGALLON,<br><br>    Defendant and Appellant. | 2d Crim. No. B331729<br>(Super. Ct. No. 19CR03216)<br>(Santa Barbara County) |

Manuel Navarro Magallon appeals a judgment following his no contest plea for committing sexual penetration of a minor 10 years old or younger (Pen. Code,[1] § 288.7, subd. (b)) (counts 1–4); lewd acts on a child under 14 years of age (§ 288, subd. (a)) (counts 6–14); and using a minor for recording sexual acts (§ 311.4, subd. (c)) (counts 15–30).

The trial court sentenced Magallon to a consecutive 15-years-to-life term on each count for counts 1 through 4 for an

---

[1] All statutory references are to the Penal Code.

aggregate indeterminate term of 60 years to life.  It sentenced him to eight years on count 6, plus a consecutive two-year term on each count for counts 7 through 14, plus a consecutive eight-month term on each count for counts 15 through 30, resulting in an aggregate determinate term of 34 years eight months.  It imposed this determinate term of 34 years eight months consecutive to his indeterminate term of 60 years to life.

We conclude: 1) a certificate of probable cause was not required; 2) the trial court could reasonably find the prohibition against multiple punishments under section 654 does not apply to the facts of this case; and 3) the abstract of judgment is incomplete.  We remand for the trial court to prepare a corrected abstract of judgment.  In all other respects, we affirm.

FACTS

Jane Doe, a young child, lived with her mother and two developmentally disabled brothers in their Santa Barbara home.  Magallon worked as "a caregiver" to provide "in-home caregiving and transportation services" for Doe's brothers.  He had "unsupervised access to Doe at the family home."

"During a seven-year period, commencing when [Doe] was age seven, [Magallon] repeatedly molested and sexually abused Doe.  He also captured video footage of the molestations and sexual abuse he committed."

In 2019, Doe found two hidden cameras in the bathroom.  Magallon was the only one who had access to that room.  Doe's mother contacted the police.  The police obtained a search warrant for Magallon's home.  They seized cameras "disguised to look like phone chargers," three laptop computers, cell phones, "memory cards," and flash drives.  The memory cards and flash

drives "stored numerous videos of [Magallon] molesting Doe, who appeared to be eight to ten years old at the time."

After his arrest, Magallon admitted to police that he touched Doe's vagina and penetrated her anus with his finger when she " 'was about seven years old.' "  He said Doe wanted him to touch her vagina and anus and wanted him to take pictures.

Magallon was charged with 30 counts that included sexual penetration of the child, lewd conduct, and recording his sexual acts with Doe.  He pled not guilty.  After two days of trial, Magallon entered a no contest plea.  He admitted that on four occasions he "sexually penetrated Jane Doe" by placing his "finger inside" her anus when she was under 10 years old (counts 1–4), and he made videos of this "sexual conduct" with the child (counts 15–18).  He admitted that these were "[s]erious and [v]iolent [f]elonies within the meaning of Penal Code [sections] 667.5(c) and 1192.7(c)(7)."  He admitted that on nine occasions he committed lewd acts on the child (counts 6–14), that these were "serious and violent felonies," and that on 16 occasions he created videos of his sexual conduct with the child (counts 15–30).

Pursuant to the plea agreement, count 5 was dismissed. The trial court imposed a term of 34 years eight months consecutive to a term of 60 years to life.

DISCUSSION

*Certificate of Probable Cause*

The People contend this appeal must be dismissed because Magallon did not obtain a certificate of probable cause.  They claim he is challenging his conviction based on his no contest plea which requires a certificate of probable cause.  (§ 1237.5.)

3

But Magallon is not challenging his no contest plea or the conviction on any count.  He claims the sentence the court imposed is unauthorized and the trial court abused its discretion in imposing it.

"[A] certificate of probable cause is not required to challenge the exercise of individualized sentencing discretion within an agreed maximum sentence." (*People v. Buttram* (2003) 30 Cal.4th 773, 790.)  "Accordingly, such appellate claims do not constitute an attack on the validity of the plea, for which a certificate is necessary." (*Id.* at p. 791.)  An appellant may obtain relief from a current unauthorized sentence. (*In re G.C.* (2020) 8 Cal.5th 1119, 1130.)

The People claim that in his plea agreement Magallon entered into "a negotiated sentence imposed as part of a plea"; consequently, his challenge to the sentence is "a challenge to the validity of the plea," and a certificate of probable cause is therefore required.  But the record does not support this claim.

In his plea agreement, Magallon checked the box that provides, "No one has made any other promises to me about what sentence the court may order."  Magallon and the district attorney stated this was an "open plea."  The plea agreement listed the potential maximum and minimum sentences.  The People's sentencing brief said the trial court has "*discretion in this case to decide whether* to impose consecutive or concurrent sentencing." (Italics added.)  Magallon requested the court to exercise its discretion to impose "15 years to life, to run concurrent to all other sentences."  The court therefore had discretion to impose a sentence it believed was appropriate.  Magallon's challenge to the exercise of the court's sentencing discretion is not an attack on the plea that requires a certificate

4

of probable cause. (*People v. Buttram*, *supra*, 30 Cal.4th at p. 790.) Here, as in *People v. Hilburn* (2023) 93 Cal.App.5th 189, 199, the plea agreement "*contemplated* that the court [would] *choose from among a range* of permissible sentences" (italics added); therefore, Magallon was not challenging the validity of the plea by challenging the court's sentencing choice.

*Prohibition on Multiple Punishment (§ 654)*

Magallon contends the trial court erred because his sentences for recording his sexual penetration and lewd acts with the child (§ 311.4, subd.(c)) should have been stayed under section 654 because they involved the same conduct and intent as his convictions for committing those sexual acts on the child. On four occasions, he "made recordings while sexually assaulting Doe when she was under the age of 10" (counts 1–4 and 15–18); and on multiple occasions he "made recordings while performing lewd acts on Doe when she was under the age of 14."

"Section 654 prohibits multiple punishments for a single physical act that violates different provisions of law." (*People v. Jones* (2012) 54 Cal.4th 350, 358.) "In some situations, physical acts might be simultaneous yet separate for purposes of section 654." (*Ibid*.)

" 'The trial court has broad latitude in determining whether section 654, subdivision (a) applies in a given case.' " (*People v. Vasquez* (2020) 44 Cal.App.5th 732, 737.) " 'If [the defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*Ibid*.)

5

"A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence." (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

"[M]ultiple sex acts committed on a single occasion can result in multiple statutory violations. Such offenses are generally 'divisible' from one another under section 654, and separate punishment is usually allowed." (*People v. Scott* (1994) 9 Cal.4th 331, 344, fn. 6.)

" '[S]ection 311.4 is part of a statutory scheme " 'to combat the exploitive use of children in the production of pornography.' " ' " (*People v. Shields* (2011) 199 Cal.App.4th 323, 332.) It " ' "prohibits the employment or use of a minor . . . in the production of material depicting that minor in 'sexual conduct.' " ' " (*Ibid.*) The Legislature was "particularly concerned" about sexual visual displays of children in videotapes. (*Ibid.*)

A trial court could reasonably find Magallon's sexual penetration and lewd conduct offenses were separate and divisible from his section 311.4, subdivision (c) video recording crimes. Section 311.4, subdivision (c) punishes a specific act; it "*targets the person actually filming the pornographic material.*" (*People v. Hobbs* (2007) 152 Cal.App.4th 1, 6.) That is an independent crime, and his sexual assaults may be committed independently without filming them.

Magallon's claim that his section 311.4, subdivision (c) convictions involved only a single lewd act is incorrect. Physical lewd conduct on a child is one act; filming the child is another. (*People v. Hobbs*, *supra*, 152 Cal.App.4th at p. 6.) For each section 311.4, subdivision (c) count conviction, Magallon admitted

that: 1) he committed a lewd act on Doe, and 2) he filmed her. By doing so, he created child sex pornography. These acts resulted in distinct consequences: 1) Doe was a victim of a physical sexual assault, and 2) she was an involuntary participant in a child sex tape. The People note that to make his videos required multiple acts: 1) retrieving "a recording device," 2) setting it to "capture himself sexually abusing [Doe]," 3) stopping the recording, 4) storing "the videos on a USB flash drive," and 5) storing the drives in his bedroom. This planning procedure is distinguishable from the single act of a sexual assault.

Those who commit child sexual assaults and those who videotape them are different types of offenders. Many child sex offenders do not record their crimes because it is evidence that could incriminate them. Their goal is to keep these crimes a "secret" (*People v. Whitlock* (2003) 113 Cal.App.4th 456, 464) and prevent the creation of corroborating physical evidence. By recording his crimes, Magallon showed that he did not share that concern and had a different goal.

The trial court could find Magallon committed his sexual penetration and lewd conduct offenses to satisfy his immediate physical lust for the child, but his video recordings of his child sexual offenses (§ 311.4, subd. (c)) had a different long term goal. The Legislature enacted the statute to extinguish "the market for child pornography." (*People v. Shields*, *supra*, 199 Cal.App.4th at p. 332.) By taking his videos, Magallon was able to create lasting images of his crimes to create child pornography.

In the People's sentencing brief, they noted that Magallon's intent was to create "child pornography" that he could later view for his pleasure, and he "admitted to watching the videos multiple times to detectives."

The probation report indicates Magallon made the videos to "preserve them," to "watch them in the future, and possibly share them with other sexual predators." These are goals that are different than committing his sexual assaults. The Legislature sought to independently punish those who create child pornography, and it did so by authorizing "a separate conviction" for each such " 'piece of media created.' " (*People v. Haraszewski* (2012) 203 Cal.App.4th 924, 945.) Imposing consecutive sentences is consistent with that legislative goal.

Magallon's videotaping of his offenses also had a unique impact on the victim. They subjected her to a continual fear of future exposure by his ability to rebroadcast the crimes and increase the potential "market for child pornography." (*People v. Shields*, *supra*, 199 Cal.App.4th at p. 332.) Doe and her mother discovered Magallon's hidden cameras years after he committed his sexual assaults. They then had to deal with the psychological impact of learning what his videos depicted. In 2023, Doe's mother said, "[I]t was very difficult for her to talk about the instant offenses and the impact they have had on Doe and herself." Doe said she did not previously disclose these crimes because it would " 'hurt the family.' " She did not want to "discuss the incidents or remember them." But the discovery of these videos that Magallon had maintained for years now brought these events back to life, forced her to remember, and revictimized the victim.

In *People v. Kongs* (1994) 30 Cal.App.4th 1741, 1754, the court noted the enactment of these offenses is to "protect the dignity and psychological well-being of children by forbidding child pornography." "A child should not have to face a lifetime of

knowing that a permanent record has been made of his or her abasement." (*Ibid.*)

Magallon made numerous videos of his sexual assaults on the child. The trial court could reasonably find separate punishment was proper for each video he made. (*People v. Shields*, *supra*, 199 Cal.App.4th at p. 332.) "Each additional photograph further exploits the minor victim, and the Legislature clearly intended to prevent that exploitation by criminalizing its creation." (*Ibid.*) "[S]ection 311.4's plain language authorizes multiple convictions." (*Ibid.*) There was no error.

*Abstract of Judgment*

The People correctly claim the abstract of judgment is incomplete and must be corrected. It does not include the sentence on count 23. The trial court is required to prepare an abstract of judgment that is accurate and complete. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Where the abstract is incorrect, "the appellate court itself should order the trial court to correct the abstract of judgment." (*Id.* at p. 188.)

DISPOSITION

The case is remanded to the trial court to prepare a corrected abstract of judgment. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


BALTODANO, J.        CODY, J.

9

Michael J. Carrozzo, Judge

Superior Court County of Santa Barbara

_____

Michael Reed, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jason Tran and Chelsea Zaragoza, Deputy Attorneys General, for Plaintiff and Respondent.